MARILYN K. COPASS, Indiv. and as Ex'r of the Estate of David W. Copass, Deceased, Plaintiff-Appellant, v. ILLINOIS POWER COMPANY *et al.*, Defendants-Appellees (Plidco International, Inc., *et al.*, Defendants).

Fourth District   No. 4—90—0642

Opinion filed March 29, 1991.

Kehart, Shafter, Hughes & Webber, P.C., of Decatur (Charles C. Hughes and Douglas S. Lake, of counsel), for appellant.

Arnold F. Blockman and Jerome P. Lyke, both of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

This is a wrongful death action brought against defendants Illinois Power Company (Illinois Power) and Ken Robinson, an employee of Illinois Power. Plaintiff's decedent was also an Illinois Power employee. The circuit court dismissed all counts against Illinois Power and Robinson with prejudice, and plaintiff appeals. We affirm.

## I. BACKGROUND

Plaintiff, Marilyn Copass, filed a 10-count complaint for the wrongful death of her husband, David, who was killed on March 31,

1989, while working on an Illinois Power gas pipeline. (See Ill. Rev. Stat. 1989, ch. 70, pars. 1 through 2.2.) The work performed by David involved joining two sections of a 12-inch gas pipeline by placing a mechanical sleeve (the Plidco Split+Sleeve) into position, which was then "torqued tight." The newly joined pipes were then brought up to pressure (300 psi), and David was testing this joint for leaks when the explosion occurred.

Count I alleged that Illinois Power committed 16 violations of the Public Utilities Act (Ill. Rev. Stat. 1989, ch. 111⅔, par. 1—101 *et seq.*) "with a conscious disregard for the safety of [d]ecedent, and with a substantial certainty of injury to [d]ecedent," and that these violations were the proximate cause of his death. Illinois Power allegedly violated the Public Utilities Act by using a defective mechanical sleeve, failing to properly instruct decedent or other employees on the proper methods for securing the sleeve, and failing to warn of its danger. Paragraph 27 of count I alleged that Illinois Power "directed and encouraged said violations, by and through its officers and agents." Plaintiff also alleged that Illinois Power was David's employer at the time of the explosion, and that David was killed in the course of his employment.

Count II against Illinois Power alleged intentional misrepresentation "by and through its agent Ken Robinson." Plaintiff alleged that Robinson misrepresented that the mechanical sleeve was appropriate for the joint and that he had used it before in similar applications.

Count IX against Robinson alleged that he committed "intentional acts which said Defendant knew, or should have known[,] created a substantial certainty of risk of harm to the [d]ecedent," and which "approximately" caused his death. The acts include, among others, failing to properly instruct David and other crew members how to increase the pressure in the pipe; telling crew members he had previously used this sleeve under similar conditions when he had not; failing to follow appropriate procedure for determining whether the sleeve should be used in this case; and failing to check the alignment of the new or existing gas pipeline. The complaint further alleged that Robinson performed these acts with conscious disregard for David's safety and with knowledge of the dangerous propensities of a high-pressure, high-volume gas distribution system.

Count X, also against Robinson, alleged intentional misrepresentation, in that Robinson told David he spoke with Plidco (the manufacturer of the sleeve) and had been advised that the Plidco Split+Sleeve was appropriate for joining the two pipes. Plaintiff also alleged that

Robinson represented he was familiar with the Plidco Split + Sleeve because he had previously used or supervised the use of such sleeves.

Three days after the accident, a claims supervisor for Illinois Power informed plaintiff by letter that because "David was working at his normal employment, you are entitled to certain benefits under the Illinois Worker's [*sic*] Compensation Act." Plaintiff thereafter received periodic payments from Illinois Power, and as of April 9, 1990, the date on which defendants' motion to dismiss was filed, those payments totalled $21,354.32. As of April 9, 1990, plaintiff had not filed a workers' compensation claim, executed a written settlement of a claim, or otherwise taken any affirmative action before the Industrial Commission (Commission).

Defendants moved to dismiss counts I, II, IX, and X, arguing that these counts were barred by the exclusivity provisions of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, pars. 138.5(a), 138.11) because plaintiff had already accepted workers' compensation benefits, *i.e.*, the payments from Illinois Power. In the alternative, defendants argued the counts failed to allege that defendants acted with the specific intent to injure, which they claimed was necessary to allege an intentional tort action against an employer or co-employee. Defendants further claimed that in the counts against Illinois Power, plaintiff failed to sufficiently allege that Illinois Power either commanded or expressly authorized Robinson's tortious actions.

Defendants submitted an affidavit from the Illinois Power claims supervisor, stating that plaintiff requested and "received weekly Illinois Workers' Compensation death benefits" directly from Illinois Power since the date of the accident, in addition to receiving payment for funeral expenses and an ambulance bill, "as provided under the Illinois Workers' Compensation Act." The affidavit included correspondence between the claims supervisor and plaintiff, informing her that she was entitled to benefits. It also included correspondence from plaintiff's attorney to the claims supervisor, questioning how he calculated the average weekly wage under the Act.

The circuit court dismissed counts I, II, IX, and X with prejudice, basing its order on (1) the plaintiff's failure to allege a specific intent to injure, and (2) the exclusivity provisions of the Act, because it found plaintiff had accepted workers' compensation benefits from Illinois Power. (See Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619.) The court granted plaintiff's motion for a Rule 304(a) finding (134 Ill. 2d R. 304(a)), and this appeal followed.

■ This case comes before us on the pleadings. Accordingly, defendants' motion to dismiss admits all well-pleaded facts and infer-

ences. *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 232, 408 N.E.2d 198, 199; *Bellmer v. Charter Security Life Insurance Co.* (1982), 105 Ill. App. 3d 234, 235, 433 N.E.2d 1362, 1364.

## II. EXCLUSIVITY OF REMEDY OF WORKERS' COMPENSATION

■ We first consider whether plaintiff is barred from pursuing her statutory and common law remedies by initially accepting workers' compensation death benefits from Illinois Power. The Act generally provides the exclusive remedy for on-the-job deaths such as this one. Sections 5(a) and 11 of the Act state, in pertinent part, as follows:

> "No common law or statutory right to recover damages from the employer *** or the agents [of the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury."

> "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer *** for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act ***." Ill. Rev. Stat. 1989, ch. 48, pars. 138.5(a), 138.11.

■ To escape the exclusivity-of-remedy rule, plaintiff must prove the injury (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment, or (4) was noncompensable under the Act. *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 463, 564 N.E.2d 1222, 1226.

■ ■ An injured employee is not permitted to seek workers' compensation benefits on a claim that the injuries are compensable *and* pursue a common law action for an intentional tort. (*Collier*, 81 Ill. 2d at 241, 408 N.E.2d at 204; *Fregeau v. Gillespie* (1983), 96 Ill. 2d 479, 486, 451 N.E.2d 870, 873-74.) Once the employee takes the express position that the injury is compensable under the Act, he is subsequently barred from taking the mutually exclusive position that the injury was intentional. While "an intentional tortfeasor should not be able to shield his liability with the exclusivity provisions of a compensation statute premised on insuring accidental injuries [citations] *** if the injured party receives compensation pursuant to the act, he or she should not be heard to subsequently allege their intentional

nature." *Collier*, 81 Ill. 2d at 239-40, 408 N.E.2d at 204, citing 2A A. Larson, Workmen's Compensation §§68.12 n.9, 67.22 (1976).

In their motion to dismiss, defendants argue that plaintiff has elected to receive compensation under the Act rather than pursue a common law action. Defendants assert that the $21,354.32 Illinois Power had paid plaintiff demonstrates her election to seek workers' compensation benefits. As further support, defendants argue that the payments by Illinois Power to plaintiff are in the amount she would be entitled to under the Act. Last, defendants also rely on the correspondence in which plaintiff's attorney claims the benefits were not calculated correctly under the Act. We emphatically reject defendants' argument on this point.

Prior decisions holding that election of the workers' compensation remedy bars an action for intentional tort do not support defendants' position because, in each case, the employee had taken some action before the Commission which unequivocally demonstrated an assertion that the injury was compensable under the Act. In *Collier*, plaintiff's action for intentional infliction of emotional distress against his employer and a co-employee was barred because plaintiff entered into a lump-sum settlement agreement which the Commission approved. The supreme court held that after accepting workers' compensation benefits for his injury on the basis they were compensable under the Act, plaintiff could not later allege the same injury was caused by an intentional act. (*Collier*, 81 Ill. 2d at 234, 408 N.E.2d at 200.) The supreme court addressed a similar question in *Fregeau* and found plaintiff's claims for assault and battery against a co-employee were barred because plaintiff had filed for and accepted workers' compensation benefits from his employer and had a workers' compensation proceeding pending before the Commission. *Fregeau*, 96 Ill. 2d at 480-81, 451 N.E.2d at 870-71.

By contrast, plaintiff in the present case has neither taken action before the Commission nor asserted in any other way that her husband's death is compensable under the Act. We hold the uninitiated payments plaintiff accepted from Illinois Power are not sufficient to constitute her election to the benefits provided by the Act. Simply accepting voluntary payments from Illinois Power, without taking any affirmative action before the Commission, is not a clear and unequivocal act evidencing an assertion that the death is compensable under the Act. To hold otherwise would allow employers to send payments to injured parties or bereaved families, characterize the payments as workers' compensation benefits, and terminate any option the em-

ployee or family might have to avoid the exclusivity-of-remedy rule under the Act.

■ In the instant case, plaintiff received a check for funeral expenses only three days after the death of her husband. At this point, in the midst of her grief, plaintiff should not be forced to choose her legal course of action. Additionally, we have no reason to believe (and frankly doubt) that plaintiff possessed any basis to believe her husband's death was other than accidental. We refuse to deem the mere acceptance of benefits so soon after the accident to be an election to be bound by the Act. Plaintiff did not request that Illinois Power begin sending her payments; instead, she merely accepted the checks they offered. There is nothing inconsistent in plaintiff's accepting uninitiated payments from decedent's employer and then alleging that the death was due to an intentional tort.

■ Defendants argue that a ruling against their position will discourage employers from making voluntary payments, thus subjecting them to liability under the Act for failing to pay benefits in a timely fashion. (See Ill. Rev. Stat. 1989, ch. 48, par. 138.19(k).) We are unconvinced. The employers' interests are still served by promptly paying workers' compensation benefits because those benefits represent their minimum liability. Employers suffer no prejudice by unilaterally paying workers' compensation benefits because any amount paid clearly would be credited against any subsequent common law judgment.

### III. Mental State Requirement For Intentional Torts

■ We next address whether counts I and IX allege the necessary mental state for an intentional tort claim so as to avoid the exclusivity-of-remedy rule of the Act. Plaintiff alleges the incident was not accidental, *i.e.*, it was the result of an intentional tort. A complaint alleging that an employer or a co-employee committed an intentional tort is not barred by the Act because one who intentionally injures an employee should not be permitted to claim the injury was "accidental" and use the Act as a shield from liability. *Meerbrey*, 139 Ill. 2d at 464, 470, 564 N.E.2d at 1226, 1229; *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 915, 380 N.E.2d 924, 928.

The issue before us is whether plaintiff is required to allege defendants had the *specific intent to injure*, or whether it is sufficient to allege defendants possessed a substantial certainty that injury would occur. For the reasons that follow, we hold that plaintiff is required to allege defendants had the specific intent to injure.

■■■ Plaintiff argues that the accepted definition of intentional tort supports her position that it is sufficient to allege that the defendants believed their actions were "substantially certain to cause injury." Generally, "[intent] extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does." (W. Keeton, Prosser & Keeton on Torts §8, at 35 (5th ed. 1984); see also Restatement (Second) of Torts §8A, at 15 (1965).) While these authorities are entitled to consideration and respect, in this instance we find them unpersuasive. We conclude that it is more consistent with the purposes of the Act to require a plaintiff to allege that the employer acted with the specific intent to injure before a complaint for an intentional tort avoids the exclusivity-of-remedy rule of the Act.

■■■ Workers' compensation statutes address the problem of on-the-job injuries by striking a balance between the interests of the employer and the injured employee. Under workers' compensation, employees may recover for injuries without proving the employer was at fault, and they are to be provided swift and certain recovery. In exchange, workers' compensation becomes the exclusive remedy because employees give up the right to pursue a potentially larger judgment in a common law action. (2A A. Larson, Workmen's Compensation Law §65.11, at 12—1 through 12—9 (1990) (hereinafter Larson).) Adopting the substantial-certainty standard would disturb this careful balance because of the difficulty of employing it to distinguish between accidental and nonaccidental injury. We agree with the following views of the supreme court of Michigan on the difficulties associated with the substantial certainty standard:

> "The problem with the substantial certainty test is that it is difficult to draw the line between substantial certainty and substantial risk. In applying the substantial certainty test, some courts have confused intentional, reckless, and even negligent misconduct, and therefore blurred the line between intentional and accidental injuries. The true intentional tort standard [should] keep the distinction clear." (*Beauchamp v. Dow Chemical Co.* (1986), 427 Mich. 1, 24-25, 398 N.W.2d 882, 893.)

While the *Beauchamp* court adopted the substantial-certainty standard, despite the reservations quoted above, that decision was later legislatively overruled and replaced by the specific-intent-to-injure standard. See *Schefsky v. Evening News Association* (1988), 169 Mich. App. 223, 226-28, 425 N.W.2d 768, 770.

Professor Larson notes that the majority of States do not use the substantial-certainty standard, and instead require specific intent to

injure before an employee avoids the exclusivity-of-remedy rule of workers' compensation. He has written as follows:

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." 2A A. Larson §68.13, at 13—36 through 13—44.

In *Ryherd v. Growmark, Inc.* (1987), 156 Ill. App. 3d 667, 509 N.E.2d 113, this court discussed in *dicta* the specific-intent-to-injure standard. We noted that "the modern view respecting actionable intentional misconduct by the employer is that it must be alleged and proved that the employer acted deliberately *with the specific intent to injure the employee.*" (Emphasis added.) (*Ryherd*, 156 Ill. App. 3d at 670, 509 N.E.2d at 116.) We now affirm our *dicta* in *Ryherd* as our holding in this case.

■■ Accordingly, we hold that an employee alleging an intentional tort against his employer or co-employee must allege that the defendant acted deliberately with specific intent to injure the employee. Under this standard, plaintiff's counts against defendants Illinois Power and Robinson fail.

### IV. ALLEGED EMPLOYER COMPLICITY IN CO-EMPLOYEE'S CONDUCT

■■ We finally note that count II against Illinois Power also was properly dismissed because it does not sufficiently allege that Illinois Power either commanded or expressly authorized Robinson's acts, or that Robinson was Illinois Power's alter ego. (*Meerbrey*, 139 Ill. 2d at 465-66, 564 N.E.2d at 1227.) Such counts against the employer for a co-employee's conduct can survive a motion to dismiss only when it is alleged that there was employer complicity in the tortious act. (*Collier*, 81 Ill. 2d at 239, 408 N.E.2d at 203; *Jablonski*, 63 Ill. App. 3d at 912-13, 380 N.E.2d at 927.) If the employer did not direct or encourage the tortious act, to him or her it is " 'just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system.' " *Collier*, 81 Ill. 2d at 239, 408 N.E.2d at 202, quoting 2A. A. Larson §68.21, at 13—74 (1976).

■■ To be sufficient to state a claim of employer complicity in a co-employee's intentional tort, a complaint *must* allege that the employer either "committed, commanded or expressly authorized" the intentional tort. (*Meerbrey*, 139 Ill. 2d at 465, 564 N.E.2d at 1227; see

also *Collier*, 81 Ill. 2d at 239, 408 N.E.2d at 202.) The allegations of count I against Illinois Power, stating that Illinois Power "directed and encouraged" the violations of the Public Utilities Act, do not sufficiently allege employer complicity in the co-employee's intentional tort. Accordingly, Illinois Power cannot be held liable for Robinson's allegedly intentional tortious conduct.

Affirmed.

LUND, P.J., and GREEN, J., concur.