847 P.2d 761

**JOHNSON CONTROLS WORLD SERVICES, INC., Defendant–Appellant,**

v.

**Doug BARNES, Plaintiff–Appellee.**

No. 13604.

Court of Appeals of New Mexico.

Jan. 5, 1993.

Certiorari Denied Feb. 15, 1993.

Bradford V. Coryell, Compton, Coryell, Hickey & Ives, P.A., Santa Fe, for defendant-appellant.

Richard Rosenstock, Santa Fe, Jeffrey J. Buckels, Albuquerque, for plaintiff-appellee.

William H. Carpenter, Chairman, Amicus Committee, Michael B. Browde, Albuquerque, amicus curiae, New Mexico Trial Lawyers Ass'n.

## OPINION

DONNELLY, Judge.

Defendant Johnson Controls World Services, Inc. (Johnson) pursues this interlocutory appeal from an order of the district court denying its motion to dismiss Plaintiff's claims for personal injuries which arose out of and in the course of his employment with Johnson. The central issue presented on appeal is whether the district court erred in holding that Count I of Plaintiff's complaint sets forth a valid claim for damages for personal injuries outside the exclusivity provision of our workers' compensation statute, NMSA 1978, Section 52–1–9 (Repl.Pamp.1991). For the reasons discussed herein, we reverse.

Plaintiff was employed by Johnson as a heavy equipment operator. On June 2, 1988, Plaintiff was directed to operate a trackhoe machine and assist in removing several underground storage tanks which had previously been used to store petroleum products or other hazardous substances at the Los Alamos National Laboratory. Johnson had been hired by the University of California (the University), the operator of the Los Alamos National Laboratory (Laboratory), to excavate and remove underground tanks.

Plaintiff's amended complaint contained three counts. Counts I and II referred to Johnson and other defendants. Count II alleged intentional commission of a wrongful act and/or reckless infliction of injury. Count III applied only to the defendant University. Neither Count II nor Count III is the subject of this appeal.

Count I alleged, among other things, that Johnson intentionally engaged in unsafe work practices and ordered Plaintiff to perform work even though it was aware that physical contact with toxic wastes contained in the tanks would cause injury to

him; that Plaintiff was injured when he was splashed with toxic liquid while operating a machine during removal of the tanks; that because the work of removing the tanks involved potential danger to workers, the University had issued detailed safety precautions and written procedures for removal of the structures, but that Johnson and other named defendants "deliberately and intentionally failed to adequately warn [him] of the known dangers involved." Count I also alleged that Johnson failed to provide Plaintiff "with appropriate protective clothing and eye wear"; "falsely informed [him] that the tanks he was to excavate that day had been properly and completely drained of hazardous liquid"; and that because of these acts and omissions Johnson knew that "injuries such as those suffered by Plaintiff were substantially certain to result."

Johnson's answer to Plaintiff's complaint denied liability on its part and raised an affirmative defense asserting that the claims raised against it were barred because Plaintiff had received benefits under the Workers' Compensation Act, and that the Act provided Plaintiff's exclusive remedy. Subsequent to filing its answer, Johnson also filed a motion to dismiss or in the alternative for summary judgment. The motion was accompanied by an affidavit of an insurance claims representative which recited that Plaintiff was receiving workers' compensation and medical benefits. Plaintiff filed a response to the motion, together with an affidavit which stated that he felt his injuries were caused by the "intentional" or "reckless" conduct of Johnson; that Johnson intentionally withheld information from him; that Johnson falsely told him the tanks had been properly drained; and that Johnson "knew that injuries were substantially certain" to result from the work he was assigned to perform. Johnson moved to strike the affidavit and materials submitted by Plaintiff in his response to Johnson's motion to dismiss.

Following a hearing, the district court denied Johnson's motion to dismiss Count I of the amended complaint and granted its motion to dismiss Count II. The court declined to consider any of the material

submitted by the parties and limited its ruling to the motion to dismiss. Johnson pursues this appeal from the order denying its motion to dismiss Count I.

## SUFFICIENCY OF THE COMPLAINT

■ Johnson argues that because Count I of Plaintiff's amended complaint did not allege that it possessed an actual intent to harm Plaintiff but, instead, alleged that the acts and omissions of Johnson "were substantially certain" to result in injury to Plaintiff, these allegations fail to set forth matters bringing this cause within an exception to the exclusivity provision (§ 52-1-9) of the Workers' Compensation Act. We agree.

■ A motion to dismiss for failure to state a claim under SCRA 1986, 1-012(B)(6) (Repl.1992) tests the formal sufficiency of the complaint, not the facts that support the allegations contained in the pleading. *Shea v. H.S. Pickrell Co.*, 106 N.M. 683, 685, 748 P.2d 980, 982 (Ct.App.1987). In considering a motion to dismiss, both the district court and the reviewing court accepts as true all facts well pleaded and determines whether the plaintiff could prevail under any state of facts provable under the claim. *California First Bank v. State*, 111 N.M. 64, 801 P.2d 646 (1990); *Environmental Improvement Div. v. Aguayo*, 99 N.M. 497, 660 P.2d 587 (1983).

Section 52-1-9 of the Workers' Compensation Act provides that the "right to the compensation provided [herein is] in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury [or death] *accidentally sustained*" where at the time of the accident, the employer has complied with the insurance provisions of the Act; "the employee is performing service arising out of and in the course of his employment"; and "the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted." Section 52-1-9(B), (C) (emphasis added).

A common feature of workers' compensation statutes is a provision specifying that the rights and remedies provided under the Act are exclusive of all other remedies of the employee for injury or death resulting from an accident which occurred in the scope and course of his or her employment. *See* 2A Arthur Larson, *The Law of Workmen's Compensation* §§ 68.00 to 69.10 (1992) (hereinafter Larson); *see generally* 82 Am.Jur. *Workers' Compensation* § 62 (1992).

Our Supreme Court in *Dickson v. Mountain States Mutual Casualty Co.*, 98 N.M. 479, 480, 650 P.2d 1, 2 (1982), noted that "[t]he exclusivity provided for by the New Mexico Workmen's Compensation Act is the product of a legislative balancing of the employer's assumption of liability without fault with the compensation benefits to the employee." The Court in *Dickson* also quoted with approval from its decision in *Mountain States Telephone & Telegraph Co. v. Montoya*, 91 N.M. 788, 791, 581 P.2d 1283, 1286 (1978), observing that " '[o]nce a workman's compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for the injury by the employee or his dependents against the employer and insurance carrier.' " *Dickson*, 98 N.M. at 481, 650 P.2d at 3.

■ The exclusivity provision of our statute, Section 52-1-9, does not bar a common-law action for damages, however, where the injury in question is not accidentally sustained but, instead, stems from an actual intent of the employer to injure the worker. *See Sanford v. Presto Mfg. Co.*, 92 N.M. 746, 594 P.2d 1202 (Ct.App.1979) (common-law liability of employer outside Workers' Compensation Act is limited to injuries deliberately inflicted); *see also Gallegos v. Chastain*, 95 N.M. 551, 624 P.2d 60 (Ct.App.1981) (basis for employer's liability outside the Act is "an actual intent" to injure on the part of the employer); *Maestas v. El Paso Natural Gas Co.*, 110 N.M. 609, 798 P.2d 210 (Ct.App.1990) (common-law claims against employer by employee for injury sustained during scope and course of employment are restricted to injuries deliberately or intentionally inflicted).

In *Sanford* this Court upheld the dismissal of the worker's complaint which alleged that the employer's tolerance of toxic fumes emanating from an oven constituted battery. In reviewing the sufficiency of the complaint, the Court examined out-of-state authority and quoted with approval Larson, *supra*, Section 68.13 (1976), concluding that in order to allege matters which will render an employer liable in tort outside the Workers' Compensation Act, the plaintiff must allege matters indicating that the employer intended to injure the plaintiff. In such context, the intent required to be alleged and proven is a "deliberate infliction of harm." *Sanford*, 92 N.M. at 748, 594 P.2d at 1204.

In *Gallegos* this Court noted *Sanford*'s discussion of Larson, *supra*, regarding the requirement of an allegation and proof of an intent on the part of an employer to injure an employee, and concluded that "the basis for the employer's liability outside the Act *is an actual intent to injure on the part of the employer*." *Gallegos*, 95 N.M. at 553, 624 P.2d at 62 (emphasis added). The *Gallegos* Court upheld an order granting summary judgment in favor of the employer on the basis that the worker's claims, which alleged negligent supervision and vicarious liability, were controlled by the exclusivity provision of the Workers' Compensation Act.

This Court, in *Maestas*, followed the path laid out by our Supreme Court in *Williams v. Amax Chemical Corp.*, 104 N.M. 293, 720 P.2d 1234 (1986), which declined to recognize a claim in tort for retaliatory discharge, and held that if an employer and employee are covered by the Act, their rights and remedies are governed by the Act. In *Maestas* the worker sought damages for physical, emotional, and psychological injuries alleged to have been sustained by him. The worker alleged his injuries resulted from the employer's negligence, and that the employer had engaged in intentional, willful, and wanton misconduct by ordering that a highly explosive mixture be combined in a pipe on which the defendant was welding. On appeal, this Court affirmed the trial court's order dismissing one count of the plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 1–012(B)(6), and reversed the trial court's order denying the defendant's motion to dismiss the remaining counts. *Maestas* noted that *Sanford* distinguished between intentionally ordered acts and intentional injuries, and that an "employer must intend to injure an employee before he can be held liable outside the Act." *Maestas*, 110 N.M. at 612, 798 P.2d at 213. *Maestas* also held that the employer's knowledge that an employee was engaged in performing work that was inherently dangerous does not, in itself, constitute a basis for the initiation of a tort action outside of the Workers' Compensation Act. *Id.*

Professor Larson, a leading authority in this area of the law, in discussing the requisite showing which must be made in order to permit an injured worker to overcome the exclusivity provision of a worker's compensation statute, notes that "the almost unanimous rule" followed by courts which have addressed this issue is that the intent required to be shown involves a conscious and deliberate intent to injure. Larson, *supra*, § 68.13. Professor Larson observes:

> Since the legal justification for the common-law action is the nonaccidental character of the injury * * *, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.

*Id.* (footnotes omitted).

Both Plaintiff and Amicus argue that this Court should adopt a different interpretation of Section 52–1–9 than the "almost unanimous rule" discussed by Professor Larson. They also contend that this Court's decisions in *Maestas*, *Gallegos*, and *Sanford* are distinguishable from the facts of the present case because, among other things, Plaintiff here alleged that Johnson

misrepresented the nature of the danger to him. Both Plaintiff and Amicus also argue that Johnson's reliance upon the exclusivity provision of Section 52–1–9 contravenes public policies that underlie legislative and judicial decisions distinguishing between workers' compensation coverage and common-law causes of action for intentional torts.

To support their argument for a different interpretation of Section 52–1–9, Plaintiff and Amicus rely on language contained in *California First Bank*. They argue that our Supreme Court recognized that commission of an intentional wrong under our tort law does not require proof of a malicious intent to cause harm, and that "the term 'intent' also denotes '[situations where] the actor believes that the consequences are substantially certain to result from [the action taken].'" *Id.*, 111 N.M. at 73 n. 6, 801 P.2d at 655 n. 6.

*California First Bank* did not involve the exclusivity provision of the Workers' Compensation Act, and did not purport to construe the statute or legislative intent leading to the enactment of Section 52–1–9. Instead, our Supreme Court focused on the issue of whether the plaintiff's complaint stated a cause of action for wrongful death and personal injury against a county based on vicarious liability for negligence of deputy sheriffs in failing to enforce liquor control laws and drunk driving statutes. In view of our Supreme Court's prior statements interpreting the exclusivity provision of our Workers' Compensation Act, we do not think the Court in *California First Bank* intended to modify its prior decisions which substantially limit exceptions to the exclusivity provision contained in Section 52–1–9. *See also Pedrazza v. Sid Fleming Contractor, Inc.*, 94 N.M. 59, 607 P.2d 597 (1980); *Dickson*, 98 N.M. at 481, 650 P.2d at 3; *Mountain States Tel. & Tel. Co.*, 91 N.M. at 791, 581 P.2d at 1286; *Briggs v. Pymm Thermometer Corp.*, 147 A.D.2d 433, 537 N.Y.S.2d 553, 556 (1989); *see generally* Wanda Ellen Wakefield, Annotation, *Employer's Tort Liability to Worker for Concealing Workplace Hazard or Nature or Extent of Injury*, 9 A.L.R.4th 778, § 3 (1981).

Plaintiff and Amicus also urge this Court to follow the rationale adopted by the Michigan Supreme Court in *Beauchamp v. Dow Chemical Co.*, 427 Mich. 1, 398 N.W.2d 882 (1986), when it approved the substantial certainty test. *See also Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 501 A.2d 505 (1985). We find these arguments inconsistent with the plain language of Section 52–1–9, and the prior interpretation of the statute in *Pedrazza* and *Williams*. In *Pedrazza* our Supreme Court observed:

> It is important to note the exclusive nature and operation of workmen's compensation. If an employer and employee are covered by the Act, all their rights and remedies are defined exclusively by the Act. § 52–1–9, N.M.S.A.1978. As between the employer and the employee, all other common law and statutory actions are barred by the Act.

*Id.*, 94 N.M. at 61, 607 P.2d at 599.

The reasoning of the Michigan Court in *Beauchamp* is inconsistent with the language of Section 52–1–9 and prior decisions of both our Supreme Court and this Court. Moreover, following the decision in *Beauchamp*, the Michigan Legislature amended its statute so as to legislatively reject the "substantial-certainty standard" recognized by the Illinois Court. *See Copass v. Illinois Power Co.*, 211 Ill.App.3d 205, 155 Ill.Dec. 600, 604–05, 569 N.E.2d 1211, 1215–16 (1991) (holding that the modern view respecting actionable intentional misconduct by the employer is that it must be alleged and proved that the employer acted deliberately with the specific intent to injure the employee).

■ Plaintiff also argues that since the allegations of his complaint alleged that Johnson engaged in fraudulent conduct, these acts rendered its conduct so egregious that it knew the injury that resulted was substantially certain to occur. Plaintiff reasons that his allegations of fraud distinguish this case from factual situations existing in earlier decisions of both our Supreme Court and this Court, and necessitate an expanded interpretation of the common-law exception to our exclusivi-

ty statute. We think the answer to this argument is governed by the plain language of Section 52–1–9. The words "accidentally sustained," as used in Section 52–1–9, refer to injury or death arising from an unintended or unexpected event. *Cf. Aranbula v. Banner Min. Co.*, 49 N.M. 253, 161 P.2d 867 (1945); *Bufalino v. Safeway Stores, Inc.*, 98 N.M. 560, 650 P.2d 844 (Ct.App.1982).

Additionally, the inquiry is not whether the employer had an intent to deceive or misrepresent facts, *see* § 52–1–9 (all injuries "accidentally" sustained are subject to the exclusivity provision of the Act), but rather whether the employer had an intent to injure the worker. An injury may unintentionally result even though an employer set the stage for the injury by deceiving or misrepresenting facts to the worker.

■ The majority of jurisdictions that have considered the question appear to agree that a mere showing of misrepresentation or deceit is insufficient to defeat the exclusivity provisions of their respective worker's compensation statutes. *See generally* Larson, *supra*, § 68.32(a). Instead, the intent issue should involve two steps. First, did the employer intend to commit the alleged act? Second, do the circumstances support a reasonable inference that the employer directly intended to harm the worker? The latter question involves the "true intent" requirement discussed above. Under this analysis, fraudulent misrepresentation, like any other act by the employer, may or may not remove an action from the exclusivity provision of the Act.

Applying this two-step analysis to the complaint, we accept as true Plaintiff's allegation that Johnson falsely informed him on the day of the injury that the tank had been drained and that he was ordered to jerk the pipes out before they had been disconnected in order to speed up the removal operation.

Accepting these allegations as true, Plaintiff has satisfied the first prong of the test. We therefore look to Plaintiff's description of the incident to see whether it was an "accident" or whether it may be characterized as a deliberate consequence of Johnson's behavior. The complaint states that Plaintiff picked up a pipe with the trackhoe and the pipe "flew up, hit the trackhoe and sprayed a gasoline-benzene liquid all over [Plaintiff]." Based on this description of how Plaintiff was injured, we do not believe that it is reasonable to infer that Johnson truly intended this series of events to occur. Therefore, even if we assume as true Plaintiff's allegation that Johnson's conduct fraudulently misrepresented the hazard to Plaintiff, the facts do not show that Johnson's conduct was equivalent to a "left jab to the chin." *See Sanford*, 92 N.M. at 748, 594 P.2d at 1204; Larson, *supra*, §§ 68.13 to 68.15, at 13–10 to 13–68.

Plaintiff and Amicus argue that public policy demands a broader interpretation of Section 52–1–9 than adopted by the trilogy of New Mexico cases discussed earlier in this opinion. They urge that interpreting the exclusivity provision to allow tort actions only where the employer intended to injure the worker discourages safety, one of the basic objectives of the modern workers' compensation program. Plaintiff and Amicus claim that subjecting an employer to tort actions where a worker is sent to perform work that involves almost certain injury or even death would encourage safer work practices.

We do not doubt that exposure to tort actions does in some instances provide a deterrent to unsafe practices. That argument, however, does not, in our view, require abandonment of the long-established goals of exclusiveness: to maintain the balance of sacrifices between employer and worker in the substitution of no-fault liability for tort liability, *Dickson*, 98 N.M. at 480, 650 P.2d at 2, and, second, to minimize litigation, even litigation of undoubted merit. Larson, *supra*, § 68.15, at 13–65.

As Professor Larson notes, there is a fallacy in importing tort concepts into workers' compensation law. "Exclusiveness is a compensation law question, not a tort law question. It is based on compensation policy—indeed, on one of the most fundamental components of that policy." *Id.*

Opening the doors to the infusion of tort concepts may undermine the very goals prescribed by our legislature for workers' compensation proceedings. Moreover, we cannot ignore the efforts of the legislature in the last six years to find ways to preserve the compensation system. In the face of that effort, we think Plaintiff's arguments that this Court should authorize the introduction of tort law concepts is at odds with legislative policy underlying our Act, and is contrary to clear Supreme Court precedent.

Any modification or departure from the language of the exclusivity statute rests with the legislature and not the courts. *See Williams*, 104 N.M. at 294, 720 P.2d at 1235 (wisdom of making changes in workers' compensation statutes, or rights thereunder, rests with legislature); *Irvine v. St. Joseph Hosp., Inc.*, 102 N.M. 572, 576, 698 P.2d 442, 446 (Ct.App.1984) (legislative policy is a matter for the legislature, not the courts); *Varos v. Union Oil Co.*, 101 N.M. 713, 715, 688 P.2d 31, 33 (Ct.App.1984) (modification of Workers' Compensation Act requires legislative therapy, not judicial surgery); *Miller v. Ensco, Inc.*, 286 Ark. 458, 692 S.W.2d 615, 617 (1985) (allegation of fraud, failure to provide safe work place, and violation of safety statutes does not constitute intentional tort for purposes of exclusivity provision).

Absent an allegation in the complaint asserting that the injury sustained by Plaintiff was intentionally inflicted by Johnson, we think the language of Section 52–1–9, and the exclusivity provision of our Workers' Compensation Act, is determinative of this issue.

■ An employee seeking to impose liability upon an employer outside the ambit of Section 52–1–9 must plead and prove an actual intent to injure the employee on the part of the employer. *See Gallegos*, 95 N.M. at 554, 624 P.2d at 63; *see also Phifer v. Union Carbide Corp.*, 492 F.Supp. 483, 485 (E.D.Ark.1980) (to avoid exclusivity provision of statute, plaintiff required to allege and prove a deliberate intent to injure); *Copass*, 155 Ill.Dec. at 604–06, 569 N.E.2d at 1215–17 (in order to state a claim of employer complicity in a co-employee's intentional tort, the allegations must indicate that the employer " 'committed, commanded or expressly authorized' the intentional tort.") Quoting *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 151 Ill. Dec. 560, 565, 564 N.E.2d 1222, 1227 (1990)).

## CONCLUSION

The order of the district court is reversed and the cause is remanded for entry of an amended order dismissing Count I of the amended complaint.

IT IS SO ORDERED.

BIVINS and CHAVEZ, JJ., concur.