**Joyce E. BOGNER, Individually and as the Independent Executor of the Estate of Richard T. Bogner, Deceased, Plaintiff,**

v.

**AIRCO, INC., et al., Defendants.**

No. 02–1157.

United States District Court, C.D. Illinois.

Feb. 1, 2005.

William B. Baggett, C. Bert Cappel, Wells Talbot Watson, Baggett McCall Burgess & Watson, Lake Charles, LA, Herschel Hobson, Law Offices of Herschel Hobson, Beaumont, TX, Ron Simon, Simon & Associates, Washington, DC, John Slevin, Vonachen Lawless Trager & Slevin, Peoria, IL, for Plaintiff.

John Heinrich, Kean Miller Hawthorne Darmond, McCowan & Jarman, Baton Rouge, LA, Denise Lazar, Brian Lewis, Wildman Harrold Allen & Dixon, Chicago, IL, Stephen Buck, Husch & Eppenberger, Peoria, IL, Scott Kozak, Joseph Orlet, Matthew Grant, Carol Rutter, St. Louis, MO, Timothy Coughlin, Damaris Fisher, Heidi Goldstein, David Nash, Laura Bancroft Nemer, Thompson Hine, LLP, Cleveland, OH, Michael Davis, Prentice Marshall, Sidley Austin Brown & Wood, Chicago, IL, Kent Plotner, Jeffrey T. Reel, Robert Shultz, Jr., Heyl Royster Voelker & Allen, Edwardsville, Michael Davis, Prentice Marshall, Kara McCall, Sidley Austin Brown & Wood, Chicago, IL, Kent Plotner, Jeffrey T. Reel, Robert Shultz, Jr., Heyl Royster Voelker & Allen, Edwardsville, Stephen Buck, Husch & Eppenberger, Peoria, Scott Kozak, Joseph Orlet, Carol Rutter, St. Louis, MO, Stephen Buck, Husch & Eppenberger, Peoria, Matthew Grant, Joseph Orlet, Carol Rutter, St. Louis, MO, Samuel Goldblatt, Nixon Peabody, Buffalo, NY, Troy Bozarth, Larry Hepler, Burroughs Hepler Broom MacDonald, Hebrank & True, Edwardsville, Mark Herman, Geoffrey Ritts, Jones Day, Cleveland, OH, David Bailey, Jones Day, Atlanta, GA, Mark Hermann, Geoffrey Ritts, North Point, Cleveland, OH, Troy Bozarth, Larry Hepler, Burroughs Hepler Broom MacDonald, Hebrank & True, Edwardsville, Douglas Behr, Natasha Drew, Arthur S. Garrett, Keller & Heckman, Washington, DC, Andrew Cross, Polsinelli Shalton & Welte, St. Louis, MO, Kevin Donovan, Victoria Miller, Glen Stuart, Morgan Lewis & Bockius, Philadelphia, PA, Mark Hansen, Stephen Heine, Heyl Royster Voelker & Allen, Peoria, Kent Plotner, Robert Shultz, Jr., Jeffrey Reel, Edwardsville, Heather Guthrie Martin, Scott North, Porter Wright Morris & Arthur, Columbus, OH, Christine Kocot, Matthew Shorey, James Virtel, Armstrong Teasdale, St. Louis, MO, Scott A. Shell, Clifton, IL, for Defendants Allied

Signal, Inc., Individually and as Successor-in-interest to Allied Chemical Corporation, BF Goodrich Company, Geon Company, Polyone Corporation, Borden Chemical, Inc., Monochem, Inc., Borden, Inc., Chevron USA, Inc., a successor to Gulf Oil Company, Condea Vista Company, Conoco, Inc., Conoco, Inc., Individually and as Successor-in-the Continental Oil Company, Thompson–Apex Company and Conoco Chemicals, Epic Polymers, Goodyear Tire & Rubber Company, Gulf Oil Corporation, Monsanto Company, Olin Corporation, PPG Industries, Inc., Pactiv Corporation, Tenneco, Inc., Tenneco Oil Company, the American Chemistry Council, Union Carbide Corporation, Uniroyal, Inc., the Dow Chemical Company, Gencorp, Georgia Gulf Corporation, Occidental Electrochemicals Corporation, Whittaker Corporation, the Society of Plastics Industry, Inc., Rhone Poulenc, Inc., Georgia Pacific Corporation, Shell Oil Company.

## ORDER

MIHM, District Judge.

This matter comes before the Court on Defendant Goodrich Corporation's Motion for Summary Judgment [# 553].[1] For the following reasons, the Motion is GRANTED.

## BACKGROUND

Plaintiff Joyce E. Bogner filed this lawsuit in her individual capacity and as the executor of her husband's estate. She alleges that her deceased husband, Richard T. Bogner, was exposed to high levels of vinyl chloride and other toxic substances while he worked in Defendant Goodrich Corporation's (Goodrich's) Henry, Illinois, manufacturing plant from 1965 to 1989. She alleges that such exposure caused Mr. Bogner to acquire angiosarcoma, a rare and fatal form of liver cancer. Plaintiff sued Goodrich, forty other named defendants, and fifty unnamed defendants.

After various motions to dismiss and other decisions, the only claims that remain against Goodrich are Bogner's claims for "battery and intentional tort," fraudulent concealment, and loss of consortium. Several claims remain against other defendants who are not involved in this motion.

## DISCUSSION

██ Ordinarily, the Illinois Workers' Occupational Disease Act (ODA) provides the exclusive remedy for an employee that contracts an occupational disease. 820 ILL. COMP. STAT. § 310/1(f) (2004); *Hartline v. Celotex Corp.*, 272 Ill.App.3d 952, 209 Ill. Dec. 404, 651 N.E.2d 582, 584 (1995). Whether the ODA allows an exception to this exclusivity rule for intentional torts that an employer commits against an employee is a threshold question on this motion. Neither the statute's text nor an opinion of the Illinois Supreme Court answers the question. When faced with an undecided question of state law in a diversity case, the role of a federal court is to predict what a states highest court would do if the same point of law was before them. *Reiser v. Residential Funding*

---

1. There are four other pending motions relating to Defendant Goodrich and its Motion for Summary Judgment: Plaintiff Joyce E. Bogner's Motion to Strike the Affidavit of Charles Cooper [# 566], Defendant B.F. Goodrich Corporation's Motion to Strike Certain Exhibits Attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [# 578], Defendant Goodrich Corporation's Motion to Strike the Affidavit of Dr. Laura Welch [# 587], and Defendant Goodrich Corporation's Motion to Strike Plaintiff's Non-Responsive Answers to Goodrich Corporation's Second Set of Interrogatories and Plaintiff's Opposition to Goodrich Corporation's Motion for Summary Judgment [# 581]. Because the Court finds that summary judgment is proper even if the Court ruled in favor of the Plaintiff on all four of these motions, the Court finds that they are MOOT.

*Corp.,* 380 F.3d 1027, 1029 (7th Cir.2004). Goodrich argues that no such exception is found in the plain language of the statute and that an Illinois Supreme Court case implicitly supports this finding. Bogner, on the other hand, responds that Illinois courts have clearly relied on such an exception to the ODA and that the supreme court case on which Goodrich relies is inapposite. For the following reasons, the Court agrees with Bogner in finding that, if the Illinois Supreme Court was faced with the same question, they would hold that there is an intentional-tort exception to the ODA.

Goodrich's first argument is that the language of the ODA specifically disallows an intentional-tort exception. Goodrich relies on the final sentence of section 7 of the ODA. That section states that the "death of an employee by reason of an occupational disease, arising out of and in the course of his or her employment, *shall be treated as the happening of an accidental injury.*" *See* 820 ILL. COMP. STAT. § 310/7 (2004) (emphasis added). Goodrich argues that this language means that all occupational diseases must be treated as accidental even if they were in fact intentionally inflicted. Thus, the argument goes, if there are no intentional occupational diseases, then can be no intentional-tort exception to the ODA. This argument, however, conveniently ignores the context of the above quoted section and gives short shrift to the purpose of the OPD.

Prior to 1974, section 7 of the OPD listed the benefits that a worker would receive if he developed an injury compensable under the ODA. *See* 820 ILL. COMP. STAT. ANN. § 310/7 (West 2004) (historical and statutory notes). This was similar to how the Illinois Workers' Compensation Act (WCA) worked, and continues to work today. The WCA lists an injury and then lists a corresponding award amount. In the case of a lost foot, for example, the employee would receive some percentage of the employee's usual compensation for 155 weeks. *See* 820 ILL. COMP. STAT. § 305/8 (2004). However, in 1974 the OPD was amended so that a worker received the same compensation for injury or death caused by a diseased under the ODA as they would for an injury caused by an accident under the WCA. *See* 820 Ill. ILL. COMP. STAT. ANN. § 310/7 (West 2004) (historical and statutory notes). In order to effectuate this change, the legislature, rather than relisting all the possible injuries and their corresponding awards in the ODA, simply referenced the WCA within section 7 of the ODA. Thus, section 7 is titled "Compensation and benefits as provided by the Workers' Compensation Act." 820 ILL. COMP. STAT. 310/7 (2004). The statute reads as follows:

> If any employee sustains any disablement, impairment, or disfigurement, or dies and his or her disability, impairment, disfigurement or death is caused by a disease aggravated by an exposure of the employment or by an occupational disease arising out of and in the course of his or her employment, such employee or such employee's dependents, as the case may be, shall be entitled to compensation, medical, surgical, hospital and rehabilitation care, prosthesis, burial costs, and all other benefits, rights and remedies, in the same manner, to the same extent and subject to the same terms, conditions and limitations, except as herein otherwise provided, as are now or may hereafter be provided by the "Workers' Compensation Act" for accidental injuries sustained by employees arising out of and in the course of their employment (except that the amount of compensation which shall be paid for loss of hearing of one ear is 100 weeks) and **for this purpose** the disablement, disfigurement or death of an employee by reason of an occupational disease,

arising out of and in the course of his or her employment, shall be treated as the happening of an accidental injury.

820 ILL. COMP. STAT. § 310/7 (2004) (emphasis added) (footnote omitted).

Goodrich ignores the emphasized language above and the statutory history in the hopes that the Court will find that section 7 stands for the broad proposition that the ODA expressly disallows an exception for intentional torts committed by employers. However, as the bolded language above suggests (language not found in Goodrich's quotations of the statute),[2] the section stands for the much narrower proposition that, *for the purposes of determining compensation under the ODA,* an occupational disease will be treated as an accidental injury. The language quoted by Goodrich merely emphasizes that the an employee injured under the ODA will receive the same compensation as worker injured accidentally under the WCA. Accordingly, the Court finds that the language in section 7 does not foreclose the possibility of an intentional-tort exception to the ODA.

The Illinois Supreme Court case that Goodrich primarily relies on is *Parks v. Libbey–Owens–Ford Glass Co.,* 360 Ill. 130, 195 N.E. 616 (1935). Goodrich claims that *Parks* "implicitly hold[s] that a 'willful violation' exception to the workers [sic] compensation bar simply was not compatible with a statutory provision that equates an occupational disease with 'the happening of an accidental injury.'" However, Goodrich does not explain how this is so. Having reviewed the case, it is clear that *Parks* in no way stands for the proposition that Goodrich desires it to—namely, that

there is no intentional-tort exception to the ODA. To the contrary, the case raised and answered the following questions: whether "(1) . . . the trial court was without jurisdiction to hear and determine the cause because the occupation in which the plaintiff was engaged was not within the provisions of section 1 of the Occupational Diseases Act; (2) . . . section 1 of this act and sections 12 and 13 of the Health, Safety and Comfort Act violated the due process provisions of the Federal and State Constitutions; and (3) . . . they contravene article 3 of the Constitution of this state." *Id.* at 617–18. In asking in answering these questions, the *Parks* court simply did not address, implicitly or explicitly, whether the ODA allows a exception for intentional torts.

Indeed, this Court is not aware of any decision by the Illinois Supreme Court holding that there is or is not an intentional-tort exception to the ODA. That court has held, however, that the WCA contains an exception for intentional torts, *Collier v. Wagner Castings Co.,* 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198 (1980); *Meerbrey v. Marshall Field & Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222 (1990), and that the exclusivity provisions of the WCA and ODA are closely related. *See Handley v. Unarco Industries, Inc.,* 124 Ill.App.3d 56, 79 Ill.Dec. 457, 463 N.E.2d 1011, 1022 (1984) ("[T]he exclusivity provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act [are] 'homologous' for purposes of judicial construction.") (*quoting Dur–Ite Co. v. Industrial Comm'n,* 394 Ill. 338, 68 N.E.2d 717, 720 (1946)).

2. Goodrich quotes the language within the statute that seemingly helps their cause—"an occupational disease . . . shall be treated as the happening of an accidental injury"—numerous time throughout the summary judgment pleadings; however, they never once note the highlighted language above. The Court is disturbed that the highlighted language was not included in Goodrich's quotations of the statute, for, whether intentional or inadvertent, the omission does not reflect well on Goodrich's counsel.

■ Further, there are several Illinois appellate-court cases finding that there is an intentional-tort exception to the ODA. Before discussing them, the Court notes that, though decisions of lower state courts are helpful and should be considered when evaluating an undecided question of state law, they do not have binding force. *Green v. J.C. Penney Auto Ins. Co., Inc.*, 806 F.2d 759, 761 (7th Cir.1986).

The first Illinois appellate decision on point, and the one that most convincingly argues for finding an exception to the exclusivity provision of the ODA for intentional torts, is *Handley v. Unarco Industries, Inc.*, 124 Ill.App.3d 56, 79 Ill.Dec. 457, 463 N.E.2d 1011, 1022 (1984). The court explained that

> [t]he Workers' Occupational Diseases Act, like the Workers' Compensation Act, establishes a system of liability without fault, and abolished traditional defenses available to the employer in exchange for the prohibition against common-law suits by employees, but we are not persuaded that this legislative balance was meant to permit an employer who encourages, commands, or commits an intentional tort to use the act as a shield against liability by raising the bar of the statute and then shifting liability throughout the system on other innocent employers.

*Id.* at 1023. Though the Court recognizes that this case is only persuasive, it has been cited by the Illinois Supreme Court for the proposition that an employer's directing an employee to commit a tort against a second employee is sufficient for the second employee to side step the WCA's exclusivity provisions. The Court recognized *Handley* as stating that the "exclusivity provisions did not bar plaintiff's suit where allegation that employer knew the dangers of asbestos and intended to kill employees satisfied the requirement that the employer expressly authorized the

intentional tort[.]" *Meerbrey v. Marshall Field and Co., Inc.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1228 (1990). Other Illinois appellate decisions, as well as one federal district court decision applying Illinois law have found that Illinois recognizes and an intentional-tort exception to the ODA. *See Hartline v. Celotex Corp.*, 272 Ill.App.3d 952, 209 Ill.Dec. 404, 651 N.E.2d 582, 584 (1995); *Ryherd v. Growmark, Inc.*, 156 Ill.App.3d 667, 108 Ill.Dec. 687, 509 N.E.2d 113, 115 (1987); *Martin v. Granite City Steel Division of Nat'l Steel Corp.*, 607 F.Supp. 1430, 1432–1433 (S.D.Ill.1985). For all these reasons, we find that, if the Illinois Supreme Court were faced with the question it would most likely find that there is an intentional-tort exception to the ODA.

■ Having determined that there is an intentional-tort exception to the ODA, the next logical step is to determine the parameters of that exception. Although there is no Illinois Supreme Court case directly on point, every lower Illinois court that has examined the issue has determined that the exception is extremely narrow. Illinois appellate courts have unanimously held that in order for an employee to overcome the exclusivity bar of either the WCA or ODA, an employee must show that the employer had the specific intent to harm the employee. *See, e.g., Limanowski v. Ashland Oil Co., Inc.*, 275 Ill.App.3d 115, 211 Ill.Dec. 666, 655 N.E.2d 1049, 1052 (1995); *Copass v. Ill. Power Co.*, 211 Ill.App.3d 205, 155 Ill.Dec. 600, 569 N.E.2d 1211, 1214–16; *Hartline*, 651 N.E.2d at 584. In doing so, such courts have specifically stated "that the defendant was 'substantially certain,' or knew with a 'strong probability,' that the injury would result from its actions is not sufficient to escape the strictures of the Act's exclusivity provisions." *Hartline*, 651 NE.2d at 584. Indeed, at least four Illinois courts of appeals and one federal district court have quoted

Professor Larson's treatise on workers' compensation in demarcating the boundaries of the exception. Professor Larson states that,

> 'Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering a claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.'

*Limanowski*, 211 Ill.Dec. 666, 655 N.E.2d at 1053 (quoting 2A LARSON, WORKERS' COMPENSATION LAW § 65.11, 12–1 through 12–9); *see also Mayfield v. ACME Barrel Co.*, 258 Ill.App.3d 32, 196 Ill.Dec. 145, 629 N.E.2d 690, 694 (1994) (quoting this same language); *Copass*, 155 Ill.Dec. 600, 569 N.E.2d at 1214 (same); *Collier*, 70 Ill. App.3d 233, 26 Ill.Dec. 641, 388 N.E.2d 265 at 269 (same); *Naszke v. Federal Exp. Corp.*, 1996 WL 450832, (N.D.Ill.1996) (docket no. 94–6084) (same) (unpublished memorandum and order).

Although the Court recognizes that this creates an extremely narrow exception to the exclusivity bar for intentional torts, the Court finds that, if faced with the question, the Illinois Supreme Court would adopt the standard proposed by Professor Larson and the lower Illinois courts. A narrow exception is in harmony with the solution to the labor-relations balancing act implemented by Illinois workers' compensation system. *See Copass*, 155 Ill.Dec. 600, 569 N.E.2d at 1215–16. Indeed, "[a]dopting the substantial-certainty standard would disturb this careful balance because of the difficulty of employing it to distinguish between accidental and nonaccidental injury." *Id.* at 1216.

What remains is to apply the specific-intent-to-injure standard to the proof sub-mitted by Bogner. Bogner attached over eighty documentary exhibits to her sixty-page opposition to Goodrich's motion for summary judgment. Within these exhibits are numerous documents that tend to prove that Goodrich had knowledge that vinyl chloride was harmful, and that it did not to share this information with its employees (at least, not until after 1974). For example, Bogner produces a May 12, 1959 letter from Dow Chemical to Bill McCormick, who was the head of Goodrich's Department of Industrial Hygiene and Toxicology, stating that 500 parts per million of vinyl chloride in plants—which was the federal regulatory limit at the time—was likely harmful. Bogner also cites a November 12, 1964 internal memo from Goodrich's Medical Director, Rex Wilson to an official Goodrich's Ohio facility. The memo states that Goodrich had recently observed several hand problems with employees working with vinyl chloride. The memo asks whether Ohio employees are experiencing similar hand problems and asks the recipient, the Ohio plant doctor, to secretly check employees hands for problems when performing any other checkup.

█ Goodrich's exhibits are replete with similar documents, all which tend to prove that Goodrich was aware early on of the threat posed by vinyl chloride, and that they did not share this fact with employees working with vinyl chloride. However, this is not the type of evidence of specific intent to harm sufficient to invoke the intentional-tort exception to the ODA. As noted above, Illinois courts have specifically rejected the proposition that knowledge of a harmful a working condition, failing to warn about such a hazard, or failing to furnish a safe place to work is sufficient to invoke the intentional-tort exception to Illinois workers' compensation system. Ac-

cordingly, Goodrich's Motion for Summary Judgment must be granted.

This is true for all of Bogner's remaining claims against Goodrich, including Bogner's claims for fraudulent concealment and loss of consortium. Though both parties at times refer to fraudulent concealment without acknowledging that the principles of the exclusivity clause of the ODA apply to it—including the requirement that a plaintiff prove specific intent to harm in order to avoid the exclusivity clause—that proposition is untenable. Though it is true that there must be a material dispute of fact as to all elements of fraudulent concealment in order for Bogner to prevail on summary judgment, Bogner must also offer some proof of Goodrich's specific intent to harm Mr. Bogner to overcome the exclusivity provision of the ODA. Because, as discussed above, Bogner has not done so, her claim of fraudulent concealment must fail. Finally, Bogner's claims for loss of consortium necessarily expire with her primary tort claims. *See Fregeau v. Gillespie,* 96 Ill.2d 479, 71 Ill.Dec. 716, 451 N.E.2d 870, 873 (1983) (holding that where the exclusivity clause of the WCA bars the employee, any derivative claims are also barred).

The Court notes that the record suggests reprehensible conduct by Goodrich in failing to protect its employees from known hazards and failing to provide its employees, including Richard Bogner, with a safe working environment. However, in the context of the claims against Goodrich now before the Court, and the facts and law applicable to those claims, Bogner's claims against Goodrich must fail.

## CONCLUSION

Defendant Goodrich's Motion for Summary Judgment [# 553] is GRANTED, and Defendant Goodrich is TERMINATED as a party-defendant. All other pending motions related to Defendant Goodrich [# 566, # 578, # 581, and # 587] are therefore MOOT. The deadline for submission of a Joint Status Report by the remaining parties to the case, which was inadvertently terminated on January 5, 2005, is reset for April 29, 2005, and further proceedings are referred to Magistrate Judge Cudmore.