(No. 26467.— )
FERGUSON & LANGE FOUNDRIES, INC., *et al.,* Defendants in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FRANK LAVELL, Plaintiff in Error.)

*Opinion filed June 11, 1942—Rehearing denied Sept. 23, 1942.*

Murphy, C. J., dissenting.

Augustine J. Bowe, and William J. Bowe, (John D. Casey, of counsel,) for plaintiff in error.

Angerstein & Angerstein, for defendants in error.

Mr. Justice Wilson delivered the opinion of the court:

Frank Lavell, a core maker, made a claim for compensation from his employer, the Ferguson & Lange Foundries, Inc., for disablement claimed to have been caused by silicosis to which he was last exposed while in such employment. The insurance carrier, the Founders Mutual Casualty Company, was also made a party to the proceeding. The arbitrator and the Industrial Commission allowed compensation, and based it on the difference in wages of $42 per week earned while in such employ and wages of $17 per week received as a clerk in a grocery store after leaving the foundry. The circuit court of Cook county set aside the award of the commission and found that it was against the manifest weight of the evidence, and that Lavell had failed to establish that he had sustained an occupational disease and a disablement arising out of and in the course of his employment, within the contemplation of the Workmen's Occupational Diseases act. We have allowed a writ of error to this court.

The facts are substantially as follows: Lavell began the occupation of a core maker in foundries about twenty years ago. From 1931 to 1933 he was unemployed, but in 1934 commenced working in a restaurant where he later became the manager at a salary of $25 per week until 1939. December 27, 1939, he commenced to work for Ferguson & Lange Foundries, Inc., as a core maker, and remained there until February 26, 1940, when he was laid off. Exposure to the hazard of silicosis in an employment in which the hazard exists is deemed conclusive provided the employment is of sixty days or more duration. (Ill. Rev. Stat. 1941, chap. 48, par. 172.25, sec. 25.) From March 18, 1940, until April 23, 1940, he worked for another foundry, and, upon being laid off, went to work in a grocery store at a weekly salary of $17. During the time he was employed in the Ferguson & Lange foundry he worked full time, except for a short period when he only worked three days per week on account of the "flu." During the time he worked in the other foundry, after being laid off by Ferguson & Lange, he worked full time.

The X-ray films introduced in evidence, and which were examined and read by medical experts, were taken February 19, June 14, July 27, and October 21, 1940. Of these, the one of July 27 was made by Dr. Harold H. Steinberg on behalf of Lavell, and the others were taken on behalf of defendant in error. Five medical witnesses testified, Dr. Steinberg and Dr. Morris Weissman for Lavell, and Doctors H. E. Davis, Stanley Giryotas, and O. A. Sander for defendant in error.

Dr. Davis, who examined Lavell while he was working for Ferguson & Lange, reported him unacceptable for foundry work based on the fact that he had an old tuberculosis, but which did not show any evidence of activity. He testified there was nothing from a physical standpoint showing he would be unable to do manual work, but that he considered it inadvisable to have a man with an old tuberculosis

in a dusty industry, and recommended that he be not kept in an employment where he was subject to the hazard of inhaling silica dust. He was of the opinion plaintiff in error could do other forms of work where he would not be exposed, but felt he was unfitted to continue employment as a foundry worker.

Dr. Giryotas, a specialist in industrial medicine and surgery, examined plaintiff in error about the middle of February, 1940, and was of the opinion he should not continue in an occupation where he would be exposed to silica dust, and so advised the employer and its insurance carrier. Dr. Sander, another witness for defendant in error, who disclosed a wide experience in industrial diseases, stated that plaintiff in error showed an old tuberculosis and there might be silicotic nodules not large enough to show in X-rays, and expressed the opinion that he should not be employed in a job where there was considerable dust exposure and where he might develop silicosis, and that, for such reason, men are not recommended for employment where there is dust exposure which may reactivate a tuberculosis lesion and thus develop silicosis.

Dr. Steinberg, called by plaintiff in error, testified he examined plaintiff in error and had an X-ray taken on July 27, 1940; that his positive findings, based on his examination and medical and occupational history, were that he showed no evidence of any respiratory embarrassment while being examined; that his chest was emphysematous, or barrel-shaped, similar to chronic lung disease patients, breathing sounds moderately diminished in both lung fields, heart negative, blood pressure well within normal limits, temperature 99 degrees, weight 155 pounds; and that, based on the occupational history of plaintiff in error, together with his clinical and X-ray examination, he formed a diagnosis of first-stage silicosis. Dr. Steinberg expressed the opinion plaintiff in error should not return to any occupation with silica dust exposure; that there is

no cure for silicosis; that the disease is definitely progressive; and that, in silicosis, there is undue susceptibility to tuberculosis as a complicating factor. On cross-examination, Dr. Steinberg stated plaintiff-in-error's case did not have a discrete nodulation through both lung fields; that on the question of progression, "we cannot individualize these cases, and I can not say that one case of silicosis is going to progress and another will not. Certain cases may and certain cases may not. We have no way of telling that. We have no way of telling how long afterwards. This case may start to progress three or five years from now, and it may start tomorrow. It may not." To the question, "Do you know whether a foundry worker who has worked, say, twenty years, who has developed what you term a first-stage silicosis or, at any rate, one that has not advanced to the stage of discrete nodulation, is considered a good, employable risk?" the witness answered: "A man who is thirty-five years of age or under, I say that he is not a good employable risk." At the time of the hearing, plaintiff in error was forty-five. The doctor advised that he no longer work in a dusty environment, testifying that physically plaintiff in error was able to do the work of a core maker, but medically he could not.

Dr. Morris Weissman, for plaintiff in error, who formed his opinion from the X-rays and a case history furnished by plaintiff in error's attorney, testified, in answer to a hypothetical question, that Lavell was suffering from tuberculosis of the right apex, and because of the history of twenty-years' exposure to sand dust, the presence of various nodules in the lung fields and also the general increase of fibrosis, he would interpret these findings as indicative of silicosis, and that the condition could be called silico-tuberculosis. In his opinion, an individual in plaintiff-in-error's state of health should never work in an occupation subjecting him to the inhalation of silica dust. On cross-examination, Dr. Weissman testified he had never examined

plaintiff in error, having been called into the case two hours and a half before the hearing; that after examining the X-rays and obtaining the case history from Lavell's attorney he had been told Lavell had been rejected for employment because of the condition shown by the X-rays, and that the diagnosis had been healed tuberculosis; that from the X-rays he made a diagnosis of tuberculosis, but could not say how long the condition had existed; that it certainly wasn't old, adding "In a tuberculous lesion, you can give it six months or you can give it three years. I would say anywhere from six months to three years in the first X-ray; * * * I found a discrete silicotic nodulation." He further testified, "Because I made no physical examination, I don't know whether,. from a physical standpoint, he is able to work or not."

Plaintiff in error worked as a core maker in a room adjacent to the foundry. There were door and. window openings between the foundry and the coreroom. He testified that sand was used in the making of cores, which, when made, are put into an oven and baked overnight, after which they are taken out and filed, rubbed and finished; that the sand and dust were at times almost ankle deep on the floor, and that he did not wear a mask while working. About February 19, 1940, he was examined by Doctors Giryotas and Davis, and X-rays of his chest were taken in Dr. Davis' office. He ceased work February 26, 1940, upon being informed by his superintendent that although his work was satisfactory he had failed to pass an acceptable physical examination. From plaintiff-in-error's testimony it appears that he tried to obtain employment in another foundry, and about the middle of March, 1940, went to work as a core maker for Hansell-Elcock Company for a period of about five weeks, his employment terminating when its safety director told him he had not passed a satisfactory physical examination; that he tried afterwards to resume his trade, but was unsuccessful; and, being unable to secure employ-

ment in his own line, was, at the time of the hearing, employed as a clerk in a small grocery store; that his weight for some years has been between 155 and 160 pounds; that when not working he feels all right; that when he worked he experienced shortness of breath, and became very tired near the end of the day. On cross-examination, he testified that except during the second and third weeks in February, 1940, when he was ill with the "flu," he worked full time for the entire period while employed by defendant in error and by Hansell-Elcock Company; that when informed by his successive employers that he had failed to pass the physical examinations and that they would have to discharge him, he still wanted to work; that he endeavored to return, and that had he not been laid off he would have continued to work.

The sole question requiring consideration is whether the circuit court was right in holding that the decision of the Industrial Commission was against the manifest weight of the evidence.

The rule as to liability of employers in occupational disease cases, as enunciated in *Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146, is as follows: "An occupational disease is caused from exposure to hazards of the employment in which the employee is engaged. To raise a right to compensation for such a disease there must have been a preceding exposure to the conditions that caused the disease; but it does not follow that liability to pay compensation follows every exposure. An employee may be exposed to hazards in his employment that cause an occupational disease and yet not contract it. The statute declares exposure is conclusively presumed if the employee is exposed for any period of time however short. An employee might be exposed in his employment to the hazards of the disease and the evidence might show it was impossible for the disease, for which he was seeking compensation, to have had its origin in or to have been proximately caused by the

employment, wherein exposure had been conclusively presumed. The liability, in that event, would not exist notwithstanding the conclusive presumption created by the statute. The question presented to the court when reviewing the record in such a case, is one of liability to pay compensation. The fact that exposure has been conclusively presumed under section 25 is of no consequence, if the right to compensation has been established under section 6. Under the latter section the evidence must show the employee has contracted a disease which is fairly traceable to the hazards of the employment with the employer from whom the compensation is claimed, and that such hazards are fairly traceable as the proximate cause of the disease." In the case cited, the arbitrator found the employee, Reali, was wholly and permanently disabled and allowed compensation for his disability. The medical testimony showed it took approximately one and one-half years for such condition to develop after exposure. One and one-half years previously, Reali had been in the employ of Liberty Foundries. According to the evidence, Reali was employed at similar work for three years prior to entering the employment of Liberty Foundries Company, but there was no evidence as to the conditions under which such service was rendered or that the hazards which cause silicosis were present in the earlier employment, and the evidence was undisputed that he was not exposed to the hazards causing the disease at any time after he ceased to be employed by the foundry company. We held that from the factual situation the Industrial Commission could well find that the silicosis with which Reali was affected had its origin in the employment with the foundry company.

It is, of course, true that plaintiff in error is conclusively deemed to have been exposed to an occupational disease during the sixty-one days he was employed by defendant in error. Proof of exposure, alone, is not, however, sufficient to sustain an award of compensation. An em-

ployee seeking compensation must show not only that he contracted an occupational disease while so exposed but also that he was disabled from earning full wages at the work in which he was last exposed. The second condition is not present because during the whole time he worked for Ferguson & Lange, as well as when he worked later in another foundry, he earned full wages. There is nothing to show that he was disabled from working full time as a core maker but only a showing he might have become disabled had he continued such work. This falls short of the requirement of the statute. Plaintiff in error was not released by Ferguson & Lange because he was disabled nor because he had silicosis. The facts disclose that he was discharged because of the danger that might arise to him by reason of the occupation and the effect it might have on his predisposition to tuberculosis. Considering all the medical testimony in the instant case, and particularly that of Dr. Steinberg to the effect that the disease of silicosis is definitely progressive and Dr. Weissman's opinion that it would take from six months to three years for the condition to have developed to the stage claimed to be present in Lavell, as shown by the first X-ray, which was taken in February, 1940, only two months after he began his employment with defendant in error, there is no showing in the evidence from which it can be reasonably concluded that Lavell was afflicted with any disease fairly traceable to the hazards of his employment with defendant in error, or that such hazards are fairly traceable as the proximate cause of his condition. No opinion has been expressed in the medical testimony giving any indication when the condition commenced or that it could have emanated from his employment with defendant in error. The tuberculosis lesion noticeable in the X-rays had shown no life prior to the time of the hearing, and, as stated by Dr. Steinberg, it "may start to progress three or five years from now, and it may start tomorrow. *It may not.*" Construing the

evidence most favorably to plaintiff in error, it is perfectly plain that the affliction of which he complains, whether non-compensable such as tuberculosis, (*Stewart Warner Corp. v. Industrial Com.* 376 Ill. 141,) or otherwise, neither had its inception in nor is fairly traceable to the hazards of his employment during the sixty-one days' exposure as an employee of defendant in error. It follows necessarily that the award of the arbitrator and decision of the Industrial Commission in favor of plaintiff in error were against the manifest weight of the evidence, and that the circuit court did not err in setting aside the decision of the commission.

Our conclusion renders unnecessary a consideration of the issue as to disablement made and argued by the parties and as defined by section 5 of the Workmen's Occupational Diseases act. Ill. Rev. Stat. 1941, chap. 48, par. 172.5.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE MURPHY, dissenting.