(No. 29459.—

THE DUR-ITE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MADGE HOLMES, Defendant in Error.)

*Opinion filed September 18, 1946.*

KLOHR & MERRICK, (HUBERT C. MERRICK, of counsel,) both of Chicago, for plaintiff in error.

AUGUSTINE J. BOWE, WILLIAM J. BOWE, and JOHN D. CASEY, all of Chicago, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

Frank Holmes filed an application for the adjustment of compensation with the Industrial Commission, charging that on or about March 31, 1938, he became permanently disabled from the occupational disease of silicosis at Martinez, California, and that, at the time of his disablement, he was engaged in repairing a tunnel. The arbitrator found that the Industrial Commission was without jurisdiction since the last exposure to the hazards of an occupational disease took place in the State of California, and not in this State. The record could not be completed owing to the death of the court reporter who took a substantial portion of the testimony, and the Industrial Commission granted Holmes's petition for a trial *de novo*. Evidence was heard by one of the commissioners but, before the Industrial Commission reached a decision, Holmes died on March 20, 1941. Thereafter, on April 9, 1941, Madge Holmes, the widow of Frank Holmes, filed her application for adjustment of claim with the Industrial Commission

charging the approximate date of disablement was April 1, 1938, that the place of disablement was California, and that, at the time of disablement, Holmes was engaged in sandblasting and drilling in concrete—repair of concrete structures, and that the general nature and character of his illness was pneumocosis and silicosis. By stipulation, portions of the record on the first hearing and the record on the second hearing before a single commissioner were admitted in evidence. An arbitrator awarded compensation, the Industrial Commission affirmed the award, and the superior court of Cook county confirmed the decision of the commission. We have granted a writ of error for a further review.

The employer, the Dur-Ite Company, is engaged in the business of rehabilitating and waterproofing cement structures such as bridges, viaducts and tunnels. Holmes was first hired by the corporation in June, 1936. From the effective date of our Workmen's Occupational Diseases Act, October 1, 1936, it is agreed that Holmes worked from October 1 to October 7, on the Roosevelt Road viaduct, in Chicago; from October 8 to November 13 on the North Avenue viaduct, in Milwaukee, Wisconsin; from November 16 to December 2, on the Sixth Street bridge, in Milwaukee; December 3 and 4, again on the Roosevelt Road viaduct, Chicago; December 6 to 16, on the Sixth Street bridge, Milwaukee; from July 16 to October 10, 1937, on the North Avenue viaduct, in Milwaukee; October 11 to November 10 on the Roosevelt Road viaduct in Chicago, and from November 25, 1937, to April 1, 1938, on the Franklin tunnel, Glen Frazer, California.

The nature and character of Holmes's employment in Illinois on and after October 1, 1936, was stipulated in detail. The work on the Roosevelt Road viaduct in Chicago consisted of general construction. The next work done in Illinois was on December 3 and 4, and consisted solely of waterproofing and involved no reconstruction.

Holmes did not work again in Illinois until October 11, 1937. His work on October 11, 12, 13, 14, 15, 17, 20, 25 and 26 and November 10 consisted solely of waterproofing. Holmes himself testified that his duties on the Roosevelt Road project in the fall of 1937 consisted of waterproofing and that there was no dust in this type of work. It also appears that, during this period, Holmes worked for about two months in the fall of 1936 and about three months in the summer and fall of 1937 on bridge and viaduct jobs in Milwaukee, Wisconsin, and that, in 1936, his work consisted of chipping concrete and drilling, and, in 1937, first, in chipping and breaking concrete, and, later, in supervising the breaking job. Both chipping and drilling produce dust. Holmes was not employed between November 10 and 25, 1937, when he commenced work on the Franklin tunnel in California.

The California project was a railroad tunnel one mile 279 feet in length, eighteen feet high and thirteen feet wide. Holmes's work consisted of drilling and forcing a liquid or semiliquid compound into the holes drilled by others. The air in the tunnel was cloudy and dusty as a result of drilling, chipping and sandblasting operations. When Holmes was working between other scaffolds and an exhaust fan, the dust from the operations on the other scaffolds would be pulled past him. Sometimes the men would stop work, waiting for the air to clear. The testimony discloses that Holmes had no physical complaints when he went to California but that, in January, 1938, he noticed shortness of breath and consulted a doctor in Martinez, who examined him and gave him two prescriptions. Holmes testified that, as he continued to work, his condition became worse, and that he observed loss of strength and developed a cough. March 31, 1938, he stopped work and returned to Illinois. On April 5, 1938, Holmes consulted Dr. Beck in Chicago, who obtained a history to the effect that he had been in good health until approximately

two months prior thereto. Holmes was hospitalized for a short time and, thereafter, remained under treatment in his home until his death. The employer concedes sufficient medical evidence was adduced upon which to base a finding that Holmes died as a result of silicosis. The medical opinions of the two physicians who attended Holmes, it may be observed, rest principally upon the exposure in California.

Seeking a reversal, plaintiff in error, the Dur-Ite Company, advances as its principal contention the proposition that the Illinois Workmen's Occupational Diseases Act is not extraterritorial in its application. Defendant in error, Madge Holmes, maintains, on the other hand, that the issue of extraterritoriality of the statute is not presented for decision. Her argument is that where a contract of employment is made in this State, and part of the exposure to the hazard of an occupational disease is in Illinois, our statute controls the rights of the parties, irrespective of the fact that part of the exposure was beyond the territorial limits of this State.

From the stipulated facts, it appears that Holmes worked five days in Illinois commencing October 1, 1936, two days in December, namely, December 3 and 4, and the next ten days in October and one day in November, a total of eighteen working days. Even if the time be calculated by including each day from October 1 to 7, inclusive, December 3 and 4, 1936, and October 11 to and including November 10, 1937, the total period would be forty days' employment in Illinois, twenty days less than the period of sixty days' employment in this State required to constitute a last exposure to silicosis. On the other hand, the exposure in both Wisconsin and California was much more prolonged and substantial. Section 6 of the statute (Ill. Rev. Stat. 1945, chap. 48, par. 172.6,) requires proof that the employee has contracted a disease the inception or aggravation of which is fairly traceable to the hazards of

the employment with the employer from whom compensation is claimed. Section 25 ordains that an employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease (other than silicosis and asbestos) when, for any length of time, he is employed in an occupation or process in which the hazard of the disease exists. This section also provides that the only employer liable for compensation in silicosis cases shall be the last employer in whose employment the employee was last exposed during a period of sixty days or more after the effective date of the statute. Section 25 does not dispense with the requirements of section 6 that there be a showing of some causal connection between the disease or its exaggeration and the employment with the employer sought to be charged. *Palmer House Co.* v. *Industrial Com.* 388 Ill. 542; *Ferguson & Lange Foundries, Inc.* v. *Industrial Com.* 380 Ill. 185; *Liberty Foundries Co.* v. *Industrial Com.* 373 Ill. 146.

Defendant in error relies, however, upon *Central Pattern and Foundry Co.* v. *Industrial Com.* 374 Ill. 300, and *Morris Metal Products Co.* v. *Industrial Com.* 370 Ill. 292. In the case last cited, the only question presented and decided was whether the provisions of section 25 of the act required exposure of sixty working days to justify recovery. The court held that where an employee has worked for sixty days or more, and has been exposed to the hazards of silicosis during a portion of the time, the period constitutes a last exposure despite the fact he may not have been exposed to such hazards on each of the sixty working days. In the *Central Pattern and Foundry case*, a question of fact was presented as to whether the employee was in employment with his last employer against whom he sought to recover compensation sixty days after the effective date of the statute. Decisions favorable to the employees in these two cases do not aid defendant in error here for the adequate reason that, according to the most liberal con-

struction of the facts, Holmes was employed in Illinois only a total of forty days. The statement in the opinion in the *Morris Metal Products Co.* case to the effect that the sixty days refers only to the period of employment and not to exposure must, of course, be construed with respect to the facts of the particular case. Neither of the decisions upon which reliance is placed lends any support to defendant in error's contention that the period of employment includes time employed beyond this State. It cannot be seriously contended upon the record made that the minimal exposure in Illinois caused Holmes's silicosis. Indeed, the finding of the arbitrator, confirmed by the Industrial Commission, is that the California exposure caused the occupational disease. This finding of the commission upon a question of fact is not manifestly against the weight of the evidence, and it is accepted as conclusive that the exposure to the hazard of silicosis in California was the effective cause of contracting the occupational disease. It follows necessarily that the question of the extraterritorial application of the statute is involved in the determination of this case, and must be decided.

The Workmen's Occupational Diseases Act and the Workmen's Compensation Act are homologous. Recourse to the respective statutes discloses the mutual relationship of the sections. The corresponding sections of each appear in the same general position, structure and number. The benefits payable under each statute are essentially alike. Unquestionably the earlier statute, in force since 1911, furnished the pattern or model for the latter statute, the Workmen's Occupational Diseases Act of 1936. An examination of the titles of the two acts and definitions of the word "employee" require scrutiny. The Workmen's Compensation Act (Ill. Rev. Stat. 1945, chap. 48, p. 1643,) is captioned, "An Act to promote the general welfare of the people of this State by providing compensation for acci-

dental injuries or death suffered in the course of employment within this State, *and without this State where the contract of employment is made within this State * * *."* Section 5 of this statute defines an employee, "Second— Every person in the service of another under any contract of hire, express or implied, oral or written, *including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois * * *."* The italicized portions of both the title of the Workmen's Compensation Act and section 5 are omitted in the title and in section 5 of the Occupational Diseases Act. The Workmen's Compensation Act, as originally enacted, did not contain the italicized portions of the title and section 5.

During the period before the Workmen's Compensation Act was amended to specifically authorize compensation for injuries occurring outside the State, this court construed the statute as it then obtained. In *Union Bridge and Construction Co.* v. *Industrial Com.* 287 Ill. 396, Eloy Williams, an employee of the bridge company, was drowned in the Ohio River beyond the territorial limits of Illinois. The Industrial Commission awarded compensation, and the circuit court of Massac county confirmed the award. The single question presented for decision was whether the Workmen's Compensation Act applied to injuries occurring outside the State. Speaking for the court, Mr. Justice Cartwright said, "No law of this State has any effect as a law, by its own force, beyond the territorial limits of the State, and if it is enforced in any other jurisdiction it is by the rule of comity, but a law effective in this State as such may create rights and liabilities arising from acts occurring outside of the State. It would have been competent for the General Assembly to provide by the Workmen's Compensation act that the employer should pay compensation for injuries suffered outside of the State. The

Workmen's Compensation act does not in specific terms limit the right to an award to accidental injuries occurring in the State, and whether it extends to such injuries must depend upon the construction of the various provisions of the act." In reaching its decision, the court made reference to the title of the statute and to various sections providing that the arbitrator shall make inquiries and investigations as he deems necessary, such as examining all books, papers, records, places or premises relating to the questions in dispute, and conducting hearings in the vicinity where the injury occurred. The provisions for a personal inspection of the premises relative to the question in dispute, the court observed, were intended to furnish evidence concerning the rights of the parties and could not have been intended to apply to premises beyond the boundaries of this State without an express provision to this effect, adding: "That provision, together with the requirement as to the place of the hearing negatives any intention to make the act effective beyond the boundaries of the State." This court concluded: "The Compensation act has been held, on account of its elective features, to create a contract obligation, but the obligation so created is that the employer will provide and pay compensation according to the provisions of the act, and he does not agree to provide and pay compensation for injuries not included within the act. * * * The Workmen's Compensation act of this State is remedial in its nature and should be liberally construed to carry out its beneficent object, but there is no provision which can be construed to authorize compensation for an injury occurring outside of the State."

In 1925, the Workmen's Compensation Act was amended by adding the italicized portions in the title and in section 5 heretofore quoted. Subsequently, the constitutional validity of the amendments of 1925 was challenged in *Beall Bros. Supply Co.* v. *Industrial Com.* 341 Ill. 193.

The court held that a law effective in Illinois may create rights and liabilities arising from acts occurring outside the State where the statute clearly shows such a legislative intention, the court saying: "Our statute merely includes all persons whose employment is outside of the State of Illinois where the contract of hiring is made within the State of Illinois. * * * the statute has no extra territorial effect, but where persons contract under it they are conclusively presumed to have accepted its provisions and to be bound thereby."

The Occupational Diseases Act, with respect to extra-territoriality, is in precisely the same position as the Workmen's Compensation Act at the time of the decision in *Union Bridge and Construction Co.* v. *Industrial Com.* 287 Ill. 396. The Workmen's Compensation Act, as it then obtained, contained no provision for injuries outside of the State, where the contract of employment was made in Illinois. In 1938, when Holmes was last exposed to the hazards of an occupational disease, the applicable statute, as now, contained no provision awarding compensation where exposure to the hazards of an occupational disease occurs beyond the territorial limits of Illinois. The legislative intention to give the statute extraterritorial effect is not apparent. Its title is "An Act to promote the general welfare of the People of this State by providing remedies for injuries suffered or death resulting from occupational diseases incurred in the course of employment; providing for enforcement and administration thereof, and to repeal an act and a part of a certain act herein named." Section 5 states that the term "employee," as used in the act, shall be construed to mean: "Second—Every person in the service of another under any contract of hire, express or implied, oral or written, * * *." Section 12 provides that an employee entitled to disability payments shall be required, if so requested by an employer, to sub-

mit himself, at the employer's expense, for medical examination to a physician or surgeon selected by the employer, at any time and place reasonably convenient for the employee, either within or without the State of Illinois. Section 19(b) provides that the arbitrator or committee of arbitration shall make such inquiries and investigations as shall be deemed necessary and may examine and inspect all books, papers, records, places or premises relative to the questions in dispute, hear such proper evidence as the parties may submit and, further, "The hearings before the arbitrator or committee of arbitration shall be held in the vicinity where the last exposure occurred, * * *." The title of the Workmen's Occupational Diseases Act, for all practical purposes, is parallel with the title of the Workmen's Compensation Act before its amendment in 1925, section 5 defines an employee in precisely the same verbiage as an employee was defined by section 5 of the Workmen's Compensation Act prior to its amendment, and section 19(b), corresponding to section 19(b) of the Workmen's Compensation Act, provides that the hearing before the arbitrator or committee of arbitration shall be heard in the vicinity where the last exposure to the hazards of an occupational disease occurred. These sections reflect the manifest legislative intent that the law does not apply to exposure beyond the boundaries of this State without an express provision to this effect. The mere fact that provision is made for a medical examination and inspection within or without the State, is far from sufficient to indicate such intent.

Our conclusion that the Workmen's Occupational Diseases Act does not extend to persons whose employment is beyond the limits of Illinois, even though the contract of employment was made in Illinois, is in harmony with familiar rules of statutory construction. As pertinently observed in 50 Am. Jur., Statutes, sec. 487: "A statute is prima facie operative only as to persons or things within

the territorial jurisdiction of the law-making power which enacted it. These rules apply to statutes using general words, such as 'any' and 'all,' in describing the persons or acts to which the statute applies." In the light of these accepted principles of statutory construction and, also, in view of our clearcut decisions in the *Union Bridge Co.* and *Beall Bros. Supply Co. cases,* the conclusion is that had the General Assembly intended the Workmen's Occupational Diseases Act to have extraterritorial application, appropriate language would undoubtedly have been employed to accomplish its purpose. We cannot indulge in speculation that the omission of words from the title indicating the act applies to exposure to the hazards of an occupational disease outside of this State where the contract of employment is made in Illinois and, also, from section 5, defining the term "employee," was inadvertent. Instead, the General Assembly deliberately and advisedly omitted extraterritorial provisions from the Workmen's Occupational Diseases Act. In short, this court must take and construe the law as we find it. Courts are not vested with legislative powers, and this court today, as in the past, declines to arrogate to itself legislative power under the guise of tortuous statutory construction.

Defendant in error directs attention, however, to the fact that section 3 of the statute divides employers into two classes, the first consisting of those who have not elected to be bound by the compensation provisions of the act, and who are made liable for damages if any employee in this State sustains an injury to his health by reason of the employer's negligence. The second class includes employers who elect to provide and pay compensation and section 4 declares that such election, when effective, "shall apply to all cases in which the last day of the last exposure as defined in this Act to the hazards of the occupational disease claimed upon shall have occurred on or after the effective date of such election." The quoted language

does not aid defendant in error since a statute of the character in controversy operates *prima facie* only as to persons or things within the territorial jurisdiction of our General Assembly, and this rule is applicable even where the statute, as here, uses general words such as "all cases," in describing the persons or acts to which the enactment applies. Defendant in error's statement that section 4 does not limit the liability to those cases in which the last exposure occurred in Illinois misses the point. The exclusion is implied by law, and the statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute. As the statute stands, the place of disablement is material and where, as here, the disablement, without question, did not occur in Illinois, the ameliorative provisions of the statute cannot be invoked. "There were days of exposure in Illinois," as defendant in error says, but the inescapable fact remains that, according her the benefit of the most favorable method of calculation, there were not sixty days of exposure in Illinois and, in addition, the silicosis contracted by her husband was not caused by exposure to the disease in this State. This being so, the mere fact that there were eighteen or forty days of exposure in Illinois, as the case may be, and that plaintiff in error was the last employer for a period of sixty days or more, become immaterial. Indeed, defendant in error concedes that if sixty days of exposure in Illinois be required, she "would be out of court."

For the reasons set forth, among others, the judgment of the superior court of Cook county is reversed, and the cause is remanded, with directions to set aside the decision of the Industrial Commission.

*Reversed and remanded, with directions.*