SILETHA JAMES, Indiv. and as Special Adm'r of the Estate of Myles James, Deceased, Plaintiff-Appellant, v. CATERPILLAR INCORPORATED et al., Defendants (Spectrulite Consortium Inc., Defendant-Appellee).

Fifth District No. 5—91—0178

Opinion filed March 31, 1993.

CHAPMAN, P.J., specially concurring.

Larry A. Calvo Law Office, of Granite City, for appellant.

Hinshaw & Culbertson, of Chicago (Bruce L. Carmen and Michael A. Lawder, of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

Siletha James, as special administrator of the estate of Myles James, deceased, and individually (hereinafter plaintiff), appeals from orders entered by the circuit court of Madison County on January 28, 1991, March 1, 1991, and March 5, 1991. The January 28, 1991, order of the trial court granted a motion to dismiss counts XXIX, XXX, and XXXI of plaintiff's fourth amended complaint. The motion to dismiss was filed by defendant, Spectrulite Consortium Incorporated (hereinafter employer), on November 20, 1990. On February 13, 1991, plaintiff filed a motion to reconsider the January 28, 1991, order dismissing the aforesaid counts of her complaint. The trial court denied plaintiff's motion to reconsider on March 1, 1991. On employer's oral motion to modify, the trial court entered its order of March 5, 1991, modifying the January 28, 1991, and March 1, 1991, orders to reflect that employer's motion was granted pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). For reasons stated as follows, we affirm.

The record indicates that plaintiff's decedent was employed by Spectrulite Consortium, Inc., on October 22, 1988, and that while plaintiff was engaged in his job duties for employer at its Madison, Illinois, facility on that date, an explosion took place in a magnesium melting pot. Plaintiff's decedent, who was operating a Caterpillar forklift truck just prior to the explosion, died from the injuries caused by this explosion. The record indicates that plaintiff filed an application for adjustment of claim, which was heard on April 17, 1989, by an arbitrator designated by the Illinois Industrial Commission. The arbitrator made the following findings of facts in support of the arbitrator's decision relating to dependency in the April 25, 1989, memorandum of decision:

> "That pursuant to a stipulation by the Respondent the Employee, Myles James, died as a result of a work related injury in the course and scope of his employment on October 22, 1988. The Arbitrator finds that based upon the testimony of the Petitioner, Siletha James, and Petitioner's Group Exhibit #1 which was admitted into evidence that [*sic*] the Employee, Myles James, is survived by his widow, Siletha James[,] and two dependent minor children, Myles James, age 11[,] and Myrlin James, age 10."

The memorandum of decision also indicates that $6,133.99 had already been paid on account of this injury. The arbitrator ruled that plaintiff was to receive from employer the sum of $273.49 per week for a period of 1,043¾ weeks as provided in paragraph (a) of section 7 of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.7(a)), because the injuries caused the death of decedent, and that employer was to receive credit for the 22³/₇ weeks paid since the death of decedent on October 22, 1988. The arbitrator also ruled that employer shall pay to plaintiff the sum of $1,750 as provided in paragraph (f) of section 7 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.7(f)) for allowable burial expenses. The arbitrator's ruling was not appealed by employer.

Plaintiff's complaint was initially filed in the instant case on July 12, 1989, joining Caterpillar Tractor Company and Wiese Planning & Engineering, Inc., as defendants. Employer was named as a respondent in discovery pursuant to section 2—402 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—402), upon allowance of plaintiff's motion for leave to amend her complaint on December 15, 1989. In its answer to plaintiff's first amended complaint, employer raised as an affirmative defense, *inter alia*, that all claims against employer arising from the incident were barred by the applicable Illi-

nois workers' compensation statutes. In plaintiff's response to the affirmative defenses raised by employer in its answer, plaintiff denied that *all* claims against employer arising from the incident were barred by the applicable workers' compensation statutes but conceded that plaintiff could not name employer as a defendant due to the exclusivity provisions of the Illinois workers' compensation law.

Plaintiff filed her third amended complaint on October 18, 1990, joining employer as a defendant in counts XXIX, XXX, and XXXI. Count XXIX of the third amended complaint alleged that on and prior to October 22, 1988, employer leased a certain Caterpillar T80D forklift truck, serial number 5LB00430. Plaintiff further alleged in count XXIX that employer was guilty of the following intentional and deliberate acts, in or about September 1988:

> "a. Failed to properly instruct the Decedent that failure to pre-heat the skimming device attached to the aforementioned forklift truck would result in serious injury or death;
>
> b. Intentionally exposed the Decedent, MYLES JAMES, and his co-employees to serious injury and death from sparks and explosions of molten magnesium by placing on the aforementioned forklift truck an inadequate safety shield.
>
> c. Intentionally exposed the Decedent and his co-employees to serious injury and death by failing to adequately fireproof the area in which the Decedent was exposed to molten magnesium."

In count XXIX, plaintiff, individually, sought actual and punitive damages against employer for decedent's wrongful death. In counts XXX and XXXI of the third amended complaint, plaintiff made the same allegations of intentional wrongful acts or omissions on employer's part. In count XXX, she sought actual damages as the representative of decedent's estate for decedent's pain and suffering prior to death, and in count XXXI, she sought recovery under the family expense act (Ill. Rev. Stat. 1989, ch. 40, par. 1015) for a funeral expense of $5,317.07.

Employer filed a motion to dismiss counts XXIX, XXX, and XXXI of the third amended complaint on November 20, 1990. Employer alleged in the motion that it had paid benefits to plaintiff pursuant to the Illinois Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) and that plaintiff had failed to allege in all three counts a cause of action that was not barred by operation of section 5 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.5), citing *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198.

In her response to employer's motion to dismiss, plaintiff conceded that she had received workers' compensation benefits as a result of the incident described in her complaint. Plaintiff contended, however, that *Collier v. Wagner Castings Co.* was distinguishable from, and its rationale was inapplicable to, the instant case. Plaintiff submitted in her memorandum in support of her response to the motion to dismiss that the *Collier* case held that in order to escape the bar of the Workers' Compensation Act against common law actions brought by an employee against the employer, the employee has to prove that the injury was not accidental, did not arise from his or her employment, or was not compensable under the Act. Plaintiff contended that she had alleged in her complaint that employer's conduct was willful and wanton and therefore that the injury to decedent was intentional, not accidental. Plaintiff argued that for purposes of ruling on the motion to dismiss, the trial court must assume that the pleadings are true. Thus, plaintiff concluded, the holding of the *Collier* case was inapplicable to the instant case.

Plaintiff also noted in her memorandum that *Collier* stood for the proposition that an employee who has collected workers' compensation benefits is barred from attempting to collect civil damages resulting from the same incident. She maintained that this bar was inapplicable in the instant case, however, because the case before the Industrial Commission was nonadversarial. Plaintiff explained in her memorandum that at the time plaintiff filed her application for adjustment of claim with the Illinois Industrial Commission, employer had already begun voluntarily paying the death benefit to her and that the case was submitted to the arbitrator as an agreed death case. She further alleged that the sole purpose of submitting the case to the Illinois Industrial Commission was so that the death benefit could be entered, which resulted in the widow being entitled to benefits under the Rate Adjustment Fund for inflationary increases and covered employment as provided by the Illinois Workers' Compensation Act. Finally, she maintained that the employer continued to pay death benefits pursuant to the Illinois Industrial Commission's award. In any event, plaintiff argued, because section 5(b) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(b)) creates a statutory lien in favor of the employer relating to sums collected from third parties, employer would be entitled to a credit or setoff from any recovery against employer on the common law action for the amounts paid by way of workers' compensation.

Employer responded in a memorandum in support of its motion to dismiss that plaintiff's common law claim against it was barred by

section 5(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(a)). It alleged that plaintiff simply took the allegations of negligence which were pled as to the other defendants and then alleged that these actions were committed by employer in an intentional fashion. Employer maintained that the Illinois Supreme Court held in *Collier v. Wagner Castings* and *Fregeau v. Gillespie* (1983), 96 Ill. 2d 479, 451 N.E.2d 870, that where a plaintiff has collected the compensation pursuant to the Workers' Compensation Act, he or she is thereafter precluded from suing for civil damages for an intentional tort on the part of the coemployee. Employer also noted that the recent decision, *Johnson v. Federal Reserve Bank* (1990), 199 Ill. App. 3d 427, 557 N.E.2d 328, failed to support plaintiff's claim that her common law action against employer was not barred. Employer explained that the *Johnson* decision held that in order to escape the bar regarding intentional torts that were inflicted by a coemployee, the employee must allege that the coemployee had acted as the alter ego of the employer. Employer noted that in plaintiff's complaint there were no allegations that it ratified the alleged intentional actions and that, in effect, the actions alleged were the actions of the employer, not of any coemployee.

Plaintiff's fourth amended complaint was filed prior to the hearing of employer's motion to dismiss and contained no revisions to counts XXIX, XXX, and XXXI of the third amended complaint. The trial court therefore considered employer's motion to dismiss as being directed towards plaintiff's fourth amended complaint.

We have not been provided with the report of proceedings for the hearings of either employer's motion to dismiss or plaintiff's motion to reconsider. The January 28, 1991, order recites, however:

> "The Court, relying on *Collier v. Wagner Casting[s] Company* (1980), 81 Ill. 2d 229, finds that plaintiff is precluded from bringing an action for civil damages against this defendant because plaintiff has received compensation on the basis that decedent's death is compensable under the Workmen's Compensation Act."

As noted above, employer's motion to dismiss was granted pursuant to section 2—619 of the Code of Civil Procedure, which provides in pertinent part:

> "(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. ***
>
> * * *
>
> (9) That the claim asserted against defendant is barred by

other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).)

On review of dismissal on the pleadings, the appellate court is concerned only with questions of law presented by the pleadings, and the standard of review is whether the complaint alleged facts which sufficiently state a cause of action. (*People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 860, 575 N.E.2d 1378, 1389.) The question of law presented by plaintiff for our review is whether a surviving spouse who proceeds to a hearing before the Industrial Commission with the workers' compensation death claim of her deceased spouse, which claim is uncontested by the employer, is barred by the exclusivity provisions of the Workers' Compensation Act from then proceeding as administrator of her deceased spouse's estate against the employer in a common law action based upon an intentional tort.

■ The exclusivity provisions of the Workers' Compensation Act are contained in sections 5 and 11 thereof (Ill. Rev. Stat. 1989, ch. 48, pars. 138.5, 138.11.) Section 5 of the Workers' Compensation Act provides in pertinent part:

"(a) No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury.

However, in any action now pending or hereafter begun to enforce a common law or statutory right to recover damages for negligently causing the injury or death of any employee it is not necessary to allege in the complaint that either the employee or the employer or both were not governed by the provisions of this Act or of any similar Act in force in this or any other State.

\* \* \*

(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the

action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

\* \* \*

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party." (Ill. Rev. Stat. 1989, ch. 48, par. 138.5.)

Section 11 of the Workers' Compensation Act provides in pertinent part:

"The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act, and whose election to continue under this Act has not been nullified by any action of his employees as provided for in this Act." (Ill. Rev. Stat. 1989, ch. 48, par. 138.11.)

We will first outline the case law relevant to our analysis of the issue presented on appeal, whether the receipt of benefits by plaintiff following nonadversarial proceedings before the Industrial Commission effects a bar of plaintiff's claim against the employer for an intentional tort, due to the exclusivity provisions of the Workers' Compensation Act. We begin with an examination of the supreme court's decision in the *Collier* case upon which the trial court relied in ruling upon employer's motion to dismiss.

In *Collier v. Wagner Castings Co.*, an employee brought a common law action for intentional infliction of emotional distress against his employer, officers of the employer, and a coemployee. The plaintiff alleged that the coemployee, a company nurse, failed to provide as-

sistance to him after he suffered a heart attack. In addition, plaintiff alleged that the coemployee advised plaintiff that he was suffering from indigestion despite clear signs of impending cardiac arrest, and that plaintiff was not taken to a hospital until his family arrived, after having been called by another co-worker. According to plaintiff's complaint, the employer and its officers promulgated rules and regulations and posted notices which announced a company policy to refuse to pay medical expenses for care obtained without the approval of the company medical attendant and that these notices and regulations intimidated plaintiff from seeking medical care before he did. Plaintiff alleged that the defendants knew or, in the exercise of ordinary care, should have known that their actions would cause severe emotional distress and that such distress was certain or substantially certain to result therefrom. The record indicated that a prior settlement agreement between the employer company and plaintiff released employer from all liabilities under the terms of the Workmens' Compensation Act in consideration for a lump-sum payment of $14,181.57.

The issue determined in *Collier*, relevant to our determination in the instant case, was whether the counts of the complaint alleging intentional infliction of emotional distress were barred by the Workers' Compensation Act. The supreme court explained that in order to escape the bar of sections 5 and 11, a plaintiff must prove that the injury either (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment, or (4) was noncompensable under the Act. The court noted that emotional distress was compensable under the Act and so plaintiff could not escape the exclusivity provisions on this basis. *Collier*, 81 Ill. 2d at 237, 408 N.E.2d at 202.

The court concluded that resolution of the case depended upon whether the plaintiff's injuries were "accidental" within the meaning of the Act. It noted that an injury must be traceable to a definite time, place, and cause to be considered accidental within the meaning of the Act. The court also noted that injuries inflicted intentionally by a coemployee are compensable under the Act as long as those injuries arose out of and in the course of the employment, because the injury is accidental from the employee's point of view. The court explained:

"[U]nless an employer has committed, 'commanded or expressly authorized' an assault like that alleged here, 'it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system' (2A A. Larson, Workmen's Compensation sec. 68.21 (1976); accord, *Jablonski v. Multack* (1978), 63 Ill. App. 3d

908[, 380 N.E.2d 924].)" (*Collier*, 81 Ill. 2d at 239, 408 N.E.2d at 202.)

The court found that since the employer in that case did not direct, encourage, or commit an intentional tort, neither the employer nor its officers should be forced to defend the suit. *Collier*, 81 Ill. 2d at 238-39, 408 N.E.2d at 202-03.

The court noted with respect to plaintiff's suit against the coemployee that *Jablonski* held that neither section 5(a) nor section 11 of the Act barred a common law suit against an intentional tortfeasor, and the court suggested that such action could be brought after compensation under the Act was awarded, with any common law recovery thereunder subject to the crediting procedures set forth in section 5(b) of the Act. The supreme court found, however, "that where an employee injured by a coemployee has collected compensation *on the basis that his injuries were compensable under the Act*, the injured employee cannot then allege that those injuries fall outside the Act's provisions." (Emphasis added.) (*Collier*, 81 Ill. 2d at 241, 408 N.E.2d at 204.) The court stated that it based this conclusion not only upon a fear of double recovery but also upon a desire to prevent the proliferation of litigation. Since the plaintiff had collected compensation pursuant to an agreement executed in lieu of a claim and approved by the Industrial Commission, giving that settlement the status of an award, the court held that plaintiff was now precluded from suing for civil damages. *Collier*, 81 Ill. 2d at 240-42, 408 N.E.2d at 203-04.

The Illinois Supreme Court addressed a related issue in *Fregeau v. Gillespie*. In *Fregeau* an employee brought an action against his coemployee for civil damages arising from an assault and battery committed against him during the course of his employment. As an affirmative defense to the complaint, the coemployee alleged that the plaintiff had filed in regard to the claimed occurrence an application for adjustment of claim with the Industrial Commission. The trial court granted defendant's motion for summary judgment on his affirmative defense, based upon plaintiff's deposition testimony that he had filed for and received workers' compensation benefits from their employer. The appellate court reversed, holding that the decision to accept workers' compensation benefits did not preclude plaintiff from bringing an action against the coemployee for an intentional tort. The Illinois Supreme Court held, however, that the appellate court's ruling directly conflicted with its holding in *Collier* and must be reversed. *Fregeau*, 96 Ill. 2d at 480-81, 451 N.E.2d at 870-71.

The court noted that following *Collier* it had held that if an employee has been compensated for an injury through a common law

action, he cannot then recover under the Workers' Compensation Act for the injury. (See *Rhodes v. Industrial Comm'n* (1982), 92 Ill. 2d 467, 471, 442 N.E.2d 509, 511.) The court stated in *Rhodes* that there is nothing to prevent a cautious employee who has a pending workers' compensation claim from also filing a common law action, if he is uncertain of his ground for recovery, so as to toll the statute of limitations, although he cannot recover payments from the employer under both actions because the Act was designed "to serve as a substitute for an employee's common law right of action and not as a supplement to it." (*Rhodes*, 92 Ill. 2d at 471, 442 N.E.2d at 511.) The court also noted in *Fregeau* that it had held that a worker's tort action against its employer, founded upon a claim of the tort of outrage because of vexatious delay in the insurer's handling of the plaintiff's workers' compensation claim, could not be maintained in view of the plaintiff's recovery for the underlying compensation claim. (See *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 451, 448 N.E.2d 866, 871.) The court concluded in *Fregeau* that because the employee chose to obtain compensation under the Act, which was designed to provide speedy recovery without proof of fault for accidental injuries, he is barred under the holding of *Collier* from bringing an action against his coemployee for civil damages. *Fregeau*, 96 Ill. 2d at 486, 451 N.E.2d at 873.

In *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 564 N.E.2d 1222, the supreme court recently addressed the issue of whether an employee who is injured as a result of the intentional conduct of a coemployee is barred by the exclusivity provision of the Workers' Compensation Act from maintaining a common law action against his employer or the coemployee. Plaintiff had alleged in *Meerbrey* that the coemployee had falsely imprisoned him, but the plaintiff admitted that his alleged injuries had arisen out of and in the course of his employment. Plaintiff claimed that the exclusivity bar of section 5 of the Act did not apply in that case because his injuries were not accidental. Although noting that injuries inflicted intentionally upon an employee by a coemployee are "accidental" within the meaning of the Act, since such injuries are unexpected and unforeseeable from the injured employee's point of view, the court also noted that the exclusivity provisions will not bar a common law cause of action against an employer for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer, adopting the rationale of the court in *Jablonski v. Multack.* (*Meerbrey*, 139 Ill. 2d at 464, 564 N.E.2d at 1226.) Because plaintiff did not allege that the employer

committed or expressly authorized its agent to commit the intentional tort upon plaintiff, the court concluded that the exclusivity provision of the Act barred plaintiff's suit against his employer. However, the court ruled that plaintiff was not barred from bringing the common law action for an intentional tort against his coemployee, noting that there was no allegation or evidence that the plaintiff had obtained compensation for his injuries under the Act, and so its holding in *Collier* did not apply. *Meerbrey*, 139 Ill. 2d at 471, 564 N.E.2d at 1230; *cf. Witham v. Mowery* (1987), 161 Ill. App. 3d 322, 514 N.E.2d 531 (plaintiff's suit against coemployee for intentional tort not barred by exclusivity provision of the Act where he had filed a claim but had not yet recovered any compensation under the Act); *Mijatov v. Graves* (1989), 188 Ill. App. 3d 792, 544 N.E.2d 809 (plaintiff's suit against coemployee for intentional tort barred by exclusivity provision of the Act where plaintiff accepted a lump-sum settlement award from her employer as worker's compensation on the basis that her injury arose in the course of her employment); *Copass v. Illinois Power Co.* (1991), 211 Ill. App. 3d 205, 569 N.E.2d 1211 (plaintiff's suit against employer and coemployee for intentional tort not barred by election of worker's compensation remedy where plaintiff had accepted voluntary uninitiated payments from the employer but had neither taken any action before the Industrial Commission nor asserted in any other way that her husband's death was compensable under the Act).

The previous cases involved causes of action against the employer and/or coemployee based upon the coemployee's intentional tort committed against the plaintiff. We note, however, that the instant case involves allegations of an intentional tort committed solely by the employer. Indeed, plaintiff seeks to distinguish *Collier* and its progeny on just this basis. A number of Illinois cases have addressed the issue of whether the exclusivity provisions of either the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1989, ch. 48, par. 172.36 *et seq.*) or the Workers' Compensation Act barred suit against an employer for the *employer's* intentional tort. The Workers' Occupational Diseases Act provides compensation for diseases arising out of, and in the course of, employment and contains provisions similar to those found in the Workers' Compensation Act, after which it was modeled, which provide that the liability of the employer is in lieu of all other actions for damages. (*Handley v. Unarco Industries, Inc.* (1984), 124 Ill. App. 3d 56, 70, 463 N.E.2d 1011, 1021-22, citing Ill. Rev. Stat. 1981, ch. 48, par. 172.40(a).) The exclusivity provisions of the Workers' Compensation Act and the Workers' Occupational Diseases Act are homologous for purposes of judicial construction. (*Martin v. Granite City*

*Steel Division of National Steel Corp.* (S.D. Ill. 1985), 607 F. Supp. 1430, 1432, citing *Dur-Ite Co. v. Industrial Comm'n* (1946), 394 Ill. 338, 68 N.E.2d 717.) We will thus treat as persuasive precedent cases examining the issue relevant to the instant case for purposes of the Workers' Occupational Diseases Act.

One court has held that where plaintiffs have alleged intentional conduct on the part of their employer (*i.e.*, that the employer intended to kill the plaintiffs and their co-workers, that the employer's purpose was that asbestos would become trapped in the workers' bodies, that the employer intended bodily harm to plaintiffs, that the employer misrepresented to plaintiffs that asbestos dust was not harmful when it knew its representations were false and that plaintiffs would become ill and die, and that the employer made such representations with the intent that the co-workers would rely upon them), such allegations are sufficient to defeat a motion to dismiss because the allegations fall outside the exclusive-remedy provisions of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1981, ch. 48, pars. 172.40, 172.46). (*Handley*, 124 Ill. App. 3d at 71-72, 463 N.E.2d at 1020.) We note, however, that the *Handley* case did not involve a situation where any of the plaintiffs had filed a claim or received compensation from the employer under the Workers' Occupational Diseases Act. Similarly, a Federal district court case, applying Illinois law, has held that the exclusivity provisions of the Workers' Occupational Diseases Act and the Workers' Compensation Act do not bar an employee from maintaining a common law action against his employer for an intentional tort. (*Martin v. Granite City Steel Division of National Steel Corp.* (S.D. Ill. 1985), 607 F. Supp. 1430, 1433.) The district court found in *Martin* that allegations of intentional exposure of employees to toxins and carcinogens by recycling coal by-products in coke ovens were sufficient to allege that the employer had directed, encouraged, or committed an intentional tort and thus to withstand a motion to dismiss where the allegations must be taken as true and construed in a light most favorable to the plaintiffs. As in the *Handley* case, there was no issue raised in *Martin* that any of the plaintiff-employees had sought or received compensation under the Acts.

The Illinois Appellate Court has also recently ruled that an employee may bring suit against his employer for intentional infliction of emotional distress and that his suit was not barred by the exclusivity provision of the Workers' Compensation Act where the plaintiff alleged intentional conduct by persons acting in their capacity as managers of the employer-Bank and therefore as the alter ego of the

Bank *and there was no indication that the employee had received compensation under the Act. (Johnson v. Federal Reserve Bank* (1990), 199 Ill. App. 3d 427, 434, 557 N.E.2d 328, 332.) In contrast, the appellate court has held that a plaintiff could not bring an action against his employer for an alleged intentional tort where the Workers' Occupational Diseases Act and Workers' Compensation Act provided the employee's exclusive remedy, due to the fact that the plaintiff had made application for and received benefits under the Act. *Ryherd v. Growmark, Inc.* (1987), 156 Ill. App. 3d 667, 669, 509 N.E.2d 113, 115.

 From our review of the above cases, we must conclude that whether a plaintiff seeks to bring a common law action against his employer for an intentional tort based upon the actions of his coemployee or the employer, as in the instant case, plaintiff's claim will be barred by the exclusivity provisions of the Act if plaintiff has filed for and received workers' compensation benefits under the Act. Plaintiff admits filing a claim with the Industrial Commission and receiving death benefits as representative of decedent's estate. She seeks to distinguish receipt of these benefits from the receipt of benefits which defeated the plaintiffs' causes of action in the above cases by describing the workers' compensation claim in the instant case as "agreed upon" or "nonadversarial" and by claiming that her purpose in filing the claim for death benefits was to become entitled to inflationary increases under the Rate Adjustment Fund provisions of the Act. Plaintiff admits, however, that there was a dispute between the parties concerning dependency, and the arbitrator's decision reflects a determination of dependency for purposes of receipt of the death benefits. We note that sections 18 and 19 of the Act provide, respectively, that all questions arising under the Act, if not settled by agreement of the parties interested therein, shall be determined by the Industrial Commission and that any disputed question of law or fact shall be determined as provided in the Act. See Ill. Rev. Stat. 1989, ch. 48, pars. 138.18, 138.19.

The only case noted above which held that the receipt of workers' compensation benefits would not bar plaintiff's action against the employer or coemployee for an intentional tort was *Copass v. Illinois Power*. In *Copass*, however, the court distinguished between benefits received voluntarily from the employer and those benefits received as a result of taking some action before the Commission. The court explained:

> "[P]laintiff in the present case has neither taken action before the Commission nor asserted in any other way that her

husband's death is compensable under the Act. We hold the uninitiated payments plaintiff accepted from Illinois Power are not sufficient to constitute her election to the benefits provided by the Act. Simply accepting voluntary payments from Illinois Power, without taking any affirmative action before the Commission, is not a clear and unequivocal act evidencing an assertion that the death is compensable under the Act." (*Copass*, 211 Ill. App. 3d at 211, 569 N.E.2d at 1215.)

As the supreme court first concluded in *Collier*, the collection of workers' compensation benefits on the basis that an employee's injury was "accidental" and thus compensable under the Act is legally inconsistent with an allegation in a common law suit that the employee's injury was "intentional" and thus falls outside the Act's provisions. See *Collier*, 81 Ill. 2d at 241, 408 N.E.2d at 782.

■ In the instant case, plaintiff's assertion, by way of filing her application for adjustment of claim, that decedent's injury was "accidental" and thus compensable under the Act is inconsistent with her position, in counts XXIX, XXX, and XXXI of her fourth amended complaint, that decedent's injury was intentionally caused by employer and thus falls outside of the Act's provisions regarding exclusivity of remedy. We do not believe that the extent of agreement between the parties before the Commission prior to the entry of an award has anything to do with the basic premise which is made when an application for adjustment of claim is presented to the Commission, *i.e.*, that the claim is based on an "accidental" injury to an employee. Indeed, the receipt of compensation from an employer based upon a settlement agreement of the parties without the need for any adversarial proceedings has been held to effect a bar to the plaintiff's right to bring suit against the coemployee for an intentional tort, because the Commission's approval gave the settlement the status of a workers' compensation award. (See *Collier*, 81 Ill. 2d at 241, 408 N.E.2d at 782.) Moreover, we note that plaintiff is not prevented from *filing* a workers' compensation action and also filing a common law action against the employer. It is clear that recovery of payments from the employer under both actions is what is prohibited. As the supreme court noted in *Rhodes*, the Act was designed "to serve as a substitute for an employee's common law right of action and not as a supplement to it." *Rhodes*, 92 Ill. 2d at 471, 442 N.E.2d at 511.

We agree that, for purposes of ruling on employer's motion to dismiss, the allegations of "intentional" conduct contained in counts XXIX, XXX, and XXXI of the fourth amended complaint must be taken as true and construed in the light most favorable to plaintiff.

However, plaintiff has admitted filing her claim with the Industrial Commission and receiving benefits following the ruling by the arbitrator. Based upon our review of the above cases, we must conclude that plaintiff in the instant case is barred by the exclusivity provisions of the Workers' Compensation Act from now pursuing a common law action against employer for an intentional tort and hold that the trial court did not err in dismissing with prejudice counts XXIX, XXX, and XXXI of plaintiff's fourth amended complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure. The January 28, 1991, March 1, 1991, and March 5, 1991, orders of the circuit court of Madison County are affirmed.

Affirmed.

LEWIS, J., concurs.

PRESIDING JUSTICE CHAPMAN, specially concurring:

It may be that the allegations in this case do not rise to the level of intentional conduct, but that is not the question we are to decide. The question before us is whether a claim based on an intentional tort is barred by the exclusivity provision of the Workers' Compensation Act if a claim has been filed and an award has been made under the Act. I agree with the majority that *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198, requires us to affirm, but I write separately because of my concern with what I perceive as an inconsistency in granting exclusivity protection to intentional misconduct.

Over the years, commentators (Amchan, *"Callous Disregard" for Employee Safety: The Exclusivity of the Workers' Compensation Remedy Against Employers*, 34 Lab. L.J. 683 (1983); Schroeder, *Workers' Compensation: Expanding the Intentional Tort Exception to Include Willful, Wanton, and Reckless Employer Misconduct*, 58 Notre Dame L. Rev. 890 (1983)) and courts (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353) have suggested that the worker's compensation statutes were the legislative issue of a bargaining mating between labor and management. Labor brought to the meeting its somewhat theoretical right to recover unlimited damages. Management brought its seemingly effective coterie of the fellow-servant rule, contributory negligence, and assumption of risk. Each side gave and each received. In return for accepting limited awards, labor obtained an increased likelihood of recovery. In exchange for relinquishing defenses, management obtained limits on damages.

Assuming that this mating took place and that the parties' surrogate, the legislature, dutifully brought forth the Workers' Compensation Act and handed it over to the accolades of the beamingly proud parents, an objective outsider might be able to discern the traits, or lack thereof, that have been described. Wouldn't the outsider look in vain, however, if the search was for either parent's gift or receipt of the gene controlling intentional injury?

The fact that such a gene does not exist is of no importance; neither do those of limited damages or the fellow-servant rule, but while all exist as concepts, the concept of intentional injuries has never been considered as an element that went into the employer-employee bargain that resulted in the worker's compensation statutes. Why then should a claim for injuries that result from intentional acts receive the protection of the exclusivity provisions of the Workers' Compensation Act?

My question goes beyond the inquiry about whether a worker's compensation claim was merely *filed* (*Witham v. Mowery* (1987), 161 Ill. App. 3d 322, 514 N.E.2d 531 (mere filing of such a claim no bar to a common law suit)) or whether an award was actually *made* (*Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198 (compensation collected under the Act precludes suit for civil damages)) and asks, if intentional torts were not part of the original bargain that the legislature considered and acted upon, why should courts grant them the protection of the exclusivity provisions of the Compensation Act?

It may be that injuries from intentional torts were brought into consideration in the first place in order to assure an injured worker of at least some recovery, and it is true that, when considered from the worker's viewpoint, an injury at work is an injury at work whether caused by negligence or intentional misconduct. The same is not true, however, if the viewpoint is switched to that of the employer. An employer which engages in conduct that rises to the level of an intentional act is no longer operating within the terms of the arrangement that gave rise to the Workers' Compensation Act. Such an employer should be subject to worker's compensation claims, both their filing and the acceptance of awards after their filing, and such an employer should also be subject to a common law action for damages. Hopefully, the number of such claims would be few, but in my judgment they should not be barred.